David H. Bernstein (dhbernstein@debevoise.com)
Jyotin Hamid (jhamid@debevoise.com)
Jill van Berg (jvanberg@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696

*Attorneys for Yves Saint Laurent America, Inc.,
Yves Saint Laurent America Holding, Inc.,
and Yves Saint Laurent S.A.S.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Christian Louboutin S.A., Christian Louboutin, L.L.C. and Christian Louboutin<br><br>Plaintiffs/Counterclaim-Defendants,<br><br>vs.<br><br>Yves Saint Laurent America, Inc., Yves Saint Laurent America Holding, Inc., Yves Saint Laurent S.A.S., Yves Saint Laurent, et al.<br><br>Defendants/Counterclaim-Plaintiffs. | Civil Action Number 11-cv-2381 (VM)<br><br>ECF Case |

**DEFENDANTS/COUNTERCLAIM-PLAINTIFFS' ANSWER AND COUNTERCLAIMS**

Defendants/Counterclaim-Plaintiffs Yves Saint Laurent America, Inc., Yves Saint Laurent America Holding, Inc. and Yves Saint Laurent S.A.S. (collectively, "YSL"), by their undersigned attorneys, Debevoise & Plimpton LLP, for their Answer and Counterclaims in response to the Complaint of Plaintiffs/Counterclaim-Defendants Christian Louboutin S.A., Christian Louboutin L.L.C. and Christian Louboutin (collectively, "Louboutin"), state as follows:

## COUNTERCLAIMS

### Introduction

1. These counterclaims arise from Louboutin's assertion of trademark rights that are based on fraudulently obtained, invalid trademark registrations (the "Contested Marks"). Louboutin claims to have the exclusive right to use red outsoles on women's footwear – even on shoes, like all the YSL models challenged in this lawsuit, that are entirely red. Louboutin's attempt to monopolize the use of red outsoles – even to the extent of claiming that no other designer can make an all-red shoe – is unsupported by law, defies common sense and would unduly restrict the design options available to competitors in this market.

2. Red outsoles are a commonly used ornamental design feature in footwear, dating as far back as the red shoes worn by King Louis XIV in the 1600s and the ruby red shoes that carried Dorothy home in *The Wizard of Oz* in the 1939 film. During the past forty years, red outsoles have been used for their ornamental qualities by dozens of designers of women's high fashion footwear sold in the United States. YSL, for example, has made numerous models of women's footwear using red outsoles dating back to the 1970s, since long before Louboutin's use of red outsoles for its shoes. Many of the models of footwear with red outsoles made by YSL and third parties have garnered attention in widely followed fashion industry publications over the years. In light of the longstanding, widespread and well known use of red outsoles in the industry, Louboutin cannot plausibly assert that red outsoles are singularly associated with the Louboutin brand.

3. Even the specific YSL shoes challenged in this lawsuit have been sold for years. Contrary to Louboutin's assertion that YSL "just beg[a]n selling" the challenged shoes in January 2011, two of the four models of monochrome shoes that Louboutin has challenged have been

available in red (as well as a line-up of other colors) for several years. Louboutin's reckless assertion that YSL has only just begun to use red outsoles for its shoes is thus demonstrably wrong.

4. The longstanding, widespread and well known use of red outsoles in the industry establishes the invalidity of Louboutin's Contested Marks for several reasons. Mr. Louboutin's sworn statement to the U.S. Patent & Trademark Office ("USPTO") in support of the Contested Marks – to the effect that Louboutin's use of a red outsole is "exclusive" – was demonstrably false when made. The statement thus constitutes fraud on the USPTO. As an industry leader who has devoted his entire professional life to women's footwear, Mr. Louboutin either knew or should have known about some or all of the dozens of footwear models that rendered his sworn statement false. In addition, the Contested Marks lack distinctiveness and are functional.

5. Louboutin also cannot demonstrate any likelihood of confusion. Two of the four models of YSL footwear challenged in this lawsuit – the Tribute and the Tribtoo – have been sold in the United States for years. Yet Louboutin admits that it is unaware of a single instance of consumer confusion, despite years of co-existence. Louboutin also admits that relevant consumers of these shoes (which cost many hundreds, and in some cases thousands, of dollars) are sophisticated and are likely to exercise great care in purchasing these expensive products.

6. Nor can Louboutin demonstrate bad faith on the part of YSL. On the models challenged by Louboutin, YSL does not use a red outsole in the same manner that Louboutin claims to use that feature – namely, as a "signature" element contrasted sharply against the rest of the shoe (nor does YSL use the same glossy, laquered red used by Louboutin.) The design concept behind the YSL models, by contrast, is monochrome – that is, the color of the insole, outsole, heel and upper is all the same. YSL offers each model in a line-up of eye-catching colors that are used

on the entire shoe: The red version is all red, including a red outsole, the blue version is all blue, including a blue outsole, the purple version is all purple, and so on. Far from reflecting a desire to mimic Louboutin's use of red, YSL's use of red reflects an entirely different design concept – namely to offer a line-up of monochromatic shoes. As such, YSL's use of red is fair, descriptive and unlikely to confuse any relevant consumer into believing that YSL shoes are made by or associated with Louboutin.

7. Despite the invalidity of its Contested Marks and the absence of any shred of evidence of confusion after many years of co-existence, Louboutin has brought this lawsuit as one part of an anti-competitive campaign to monopolize use of a common design feature and thereby inappropriately limit the design options available to competitors. Louboutin also has engaged in aggressive and unlawful interference with YSL's business as another part of its anti-competitive campaign. Specifically, before filing suit, Louboutin pressured the major third-party retailers to stop selling certain YSL footwear and to return the products in question to YSL. Louboutin's unlawful tactics forced the return not only of the models challenged in this lawsuit but also of models that Louboutin has not even challenged.

8. Accordingly, YSL brings these counterclaims seeking cancellation of Louboutin's Contested Marks and recovery of the damages caused by Louboutin's tortious interference.

**Jurisdiction and Venue**

9. This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201(a) and 2202.

10. This Court has personal jurisdiction over Louboutin pursuant to N.Y. C.P.L.R. § 302(a)(l) and because Louboutin has submitted itself to the personal jurisdiction of this Court by commencing this action.

11. Venue is proper in this district under 28 U.S.C. § 1391. Louboutin filed its Complaint in this District and thus has consented to venue in this Court.

**The Parties**

12. Counterclaim-Plaintiff Yves Saint Laurent America, Inc. is a New York corporation with its principal place of business at 3 East 57th Street, New York, New York 10022.

13. Counterclaim-Plaintiff Yves Saint Laurent America Holding, Inc. is a New York corporation with its principal place of business at 3 East 57th Street, New York, New York 10022.

14. Counterclaim-Plaintiff Yves Saint Laurent S.A.S. is organized under the laws of France as a Société par Actions Simplifiée and has its principal place of business at 7, Avenue George V, Paris 75008, France.

15. Upon information and belief, Counterclaim-Defendant Christian Louboutin S.A. is a corporation, organized and existing under the laws of France, having its principal place of business at 19 rue de Jean-Jacques Rousseau, Paris, France 75001.

16. Upon information and belief, Counterclaim-Defendant Christian Louboutin, L.L.C. is a New York corporation with its principal place of business at 306 West 38th Street, New York, New York 10018.

17. Upon information and belief, Counterclaim-Defendant Christian Louboutin is an individual and a citizen of the country of France with an address at 1 rue Volney, Paris, France 75002.

**The YSL Brand**

18. The YSL brand was founded by famed fashion designer Mr. Yves Saint Laurent and his partner, Mr. Pierre Bergé, in 1962. The fashion house, and specifically Mr. Saint

Laurent, has been credited with popularizing the concept of ready-to-wear clothing lines, as well as a range of other innovations including "le smoking," his legendary smoking suit, the reefer jacket (1962), the sheer blouse (1966), and the jumpsuit (1968). The YSL brand is one of the most famous fashion brands in the world, and has been for almost 50 years. YSL has produced seasonal shoe collections since the brand's inception.

19. In 1999, the Gucci Group, a wholly-owned subsidiary of PPR (commonly referred to as "PPR Group" and formerly known as "Pinault-Printemps-Redoute"), purchased the YSL brand and remains the sole owner of the fashion house to this day.

20. In addition to its shoe collection, YSL currently produces ready-to-wear clothing, jewelry, handbags, leather goods and other accessories. YSL sells its products in various locations throughout the world, including Tokyo, New York, London and Paris.

**YSL's Historical Use of Red Outsoles**

21. Red has been a significant color throughout YSL's history and as such, has been frequently represented across YSL's various product lines. YSL first used the color red on the outsoles of women's footwear as far back as the 1970s. Since then, YSL frequently has designed, produced, distributed, marketed, sold and used footwear with red outsoles.

22. In the past decade, YSL footwear models using red outsoles have included the Pin-Up, as featured in the Fall/Winter 2003 collection; the Taï Taï, as featured in the Fall/Winter 2004 collection; the Lotus, as featured in the Fall/Winter 2004 collection; the Eva, as featured in the Fall/Winter 2004 and Cruise 2005 collections; the Tolede, as featured in the Cruise 2005 collection; the Palma, as featured in the Cruise 2005 collection; the Sierra, as featured in the Cruise 2005 collection; the Saint Germain, as featured in the Spring/Summer 2005 collection; the Sévilla, as featured in the Spring/Summer 2005 collection; the Berenice as featured in the Pre-

Fall 2005 collection; the Cléo, as featured in the Fall/Winter 2005 collection; the Bow, as featured in the Fall/Winter 2005 collection; the Jeanne, as featured in the Fall/Winter 2005 collection; the Belle, as featured in the Pre-Fall 2006 collection; the Wild, as featured in the Pre-Fall 2006 collection; the Belle de Nuit, as featured in the Pre-Fall 2006 collection; the Mylady, as featured in the Pre-Fall 2006 collection; the Cabaret, as featured in the Pre-Fall 2008 collection; the Charlie, as featured in the Pre-Fall 2008 collection; the Liza, as featured in the Pre-Fall 2008 collection; the Tribute, as featured in the Cruise 2008, Pre-Fall 2009, Fall/Winter 2009 and Cruise 2011 collections; the Lili, as featured in the Cruise 2009 collection; the Aliama, as featured in the Pre-Fall 2009 collection; the Gaby, as featured in the Pre-Fall 2009 collection; the Divine, as featured in the Fall/Winter 2009 collection; the Imperiale, as featured in the Fall/Winter 2009 collection; the Tribtoo, as featured in the Fall/Winter 2009 and Cruise 2011 collections; the Essentiel, as featured in the Spring/Summer 2010 collection; the Florale, as featured in the Spring/Summer 2010 collection; the Sublime, as featured in the Spring/Summer 2010 collection; the Carmen, as featured in the Pre-Fall 2010 collection; the Hortense, as featured in the Pre-Fall 2010 collection; the Palais, as featured in the Cruise 2011 collection; the Woodstock, as featured in the Cruise 2011 collection; the Gipsy, as featured in the Cruise 2011 collection; the Opéra, as featured in the Cruise 2011 collection; the Gisèle, as featured in the Cruise 2011 collection; the Clémence, as featured in the Cruise 2011 collection; and the New Rive Gauche, as featured in the Cruise 2011 collection.

23.    YSL's decision to use red outsoles has always been the result of purely aesthetic considerations.  On each of the four models of footwear challenged by Louboutin in this lawsuit – the Tribute, the Tribtoo, the Palais and the Woodstock – as well as nearly all other YSL models of footwear with red outsoles, the key design concept has been to offer monochromatic footwear

in a line-up of eye-catching colors. Consistent with this design concept, the shoes are characterized by the use of the same solid color for the entire shoe: the insole, outsole, heel and upper. The Tribute has been available in red since 2008. The Tribtoo has been available in red since 2009.

24. YSL footwear models with red outsoles have been well known in the industry and among relevant consumers for years, including because of their exposure in industry publications.

**Third Party Use of Red Outsoles**

25. YSL is not alone in using the color red as a design choice for its shoes. Dozens of parties have designed, produced, distributed, marketed, sold or used women's footwear with red outsoles for years, and continue to do so today. Many of these models of footwear have received broad exposure in industry publications.

**Louboutin's Contested Marks**

26. Although Louboutin claims that it has been using red outsoles as a trademark since 1992, it did not apply to register the red outsoles as a trademark in the United States until 2007. In the process of pursuing those applications, Louboutin made false statements that constitute fraud on the USPTO and render the registrations invalid.

27. Louboutin applied to the USPTO to register marks depicting red outsoles for footwear on three separate occasions. One application was subsequently abandoned. A second application was approved by the USPTO on January 1, 2008, and subsequently matured into U.S. Registration No. 3,361,597. This is the registration cited by Louboutin in its Complaint and upon which Louboutin purports to base its primary cause of action against YSL in this lawsuit. Louboutin also applied to register a third mark by filing with the USPTO a "request for extension

of protection" relating to a trademark Louboutin had previously registered with French authorities. The USPTO approved that third application on January 29, 2008; it subsequently matured into U.S. Registration No. 3,376,197.

28. Mr. Louboutin, who is listed personally as the owner of the registrations, made demonstrably false statements in the sworn declarations that he submitted to the USPTO in support of the Contested Marks. Most seriously, he asserted under oath that Louboutin had been the "substantially exclusive" user of red outsoles on women's footwear since 1992. That was a false statement when made and remains false today. Given his longstanding experience and expertise in the industry, Mr. Louboutin must have or should have known that his statement was false. Mr. Louboutin also falsely asserted that "all" shoes he has designed since 1992 have used a red outsole. That too was a deliberate false statement to the USPTO.

**Louboutin's Bad Faith and Unlawful Interference with YSL's Business**

29. Louboutin first contacted YSL in January 2011 to object to YSL's monochromatic Tribute, Tribtoo, Palais and Woodstock models to the extent they are available in red. Contrary to the egregious mischaracterizations contained in Louboutin's motion papers filed with this Court, YSL never acknowledged the "fame" or "distinctiveness" of the so-called "Red Sole Mark." The February 3 letter to which Louboutin refers made no such acknowledgment. Rather, the February 3 letter noted that Louboutin's "signature" is use of a red sole specifically as contrasted against a different color for the rest of the shoe, particularly the upper. The letter further made clear that the challenged YSL models reflected a completely different design concept and conveyed a completely different look insofar as they were monochromatic and because they did not even use a shade of red similar to that used by Louboutin. YSL therefore declined to acquiesce to Louboutin's unreasonable demands.

30. Five weeks later, on March 14, Louboutin sent a self-serving letter, presumably "for the record," mischaracterizing the substance of the February 3 letter, and another three weeks after that, on April 7, Louboutin filed its Complaint and motion papers.

31. In the meantime, while it delayed filing suit, Louboutin was embarked on an unlawful campaign to intimidate department stores into ceasing sales of YSL footwear. As a result of pressure exerted by Louboutin, several retailers – including Saks Fifth Avenue, Barneys New York, Bergdorf Goodman and Neiman Marcus – refused to continue selling a range of YSL footwear and returned their inventory to YSL.

32. Louboutin used improper and wrongful means to persuade the stores to return the products. In effect, Louboutin organized an anti-competitive "group boycott" of YSL's products, thereby shutting YSL out of one of its most important distribution channels – high-end department stores. On information and belief, Louboutin accomplished this goal by making false or misleading claims to the retailers about its rights to prevent them from selling YSL products. The models of footwear that Louboutin improperly pressured the retailers to return included not only the models challenged by Louboutin in this lawsuit but also additional models that Louboutin has never challenged.

33. As a result of Louboutin's conduct, YSL suffered significant losses, including unnecessary storage and shipping costs and lost revenue on the returned inventory.

**<u>First Counterclaim</u>**
**Cancellation of Marks under 15 U.S.C. §§ 1119, 1052(f) [Lack of Distinctiveness]**

34. YSL repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

35. Louboutin asserts trademark rights in the color red for the outsoles of women's high-fashion shoes, as shown in the Contested Marks.

36.     Louboutin's Contested Marks do not constitute valid and protectable trademarks because they are aesthetic, ornamental, decorative design elements that lack distinctiveness and do not serve as source identifiers for Louboutin.

37.     The Contested Marks have not acquired distinctiveness through substantially exclusive and continuous use because YSL, as well as dozens of non-parties, have produced women's footwear with red outsoles both before and since the registrations of the Contested Marks became effective, and before and since Louboutin's claimed first use of the color red for outsoles.

38.     YSL is being and will continue to be damaged by Louboutin's continued registration of the Contested Marks, as such registrations form the basis for Louboutin's meritless claims of, among other things, infringement, dilution, counterfeiting and unfair competition, and because such registrations are being cited by Louboutin in connection with its tortious interference with YSL's business relations with major retailers.

39.     In light of the foregoing, the Court should declare Louboutin's purported marks invalid and cancelled pursuant to 28 U.S.C. §§ 2201 and 2202, 15 U.S.C. §§ 1119 and 1052(f).

**Second Counterclaim**
**Cancellation of Marks under §§ 15 U.S.C. 1119, 1064(3) [Fraud on the USPTO]**

40.     YSL repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

41.     In its submissions seeking federal registration of the Contested Marks, Louboutin made incomplete, misleading and fraudulent assertions that it knew or should have known to be false, as detailed above.

42. These false assertions were material to the USPTO's decision to register the Contested Marks because they were the basis for Louboutin's claim that the Contested Marks qualified for registration under a theory of acquired distinctiveness.

43. YSL is being and will continue to be damaged by Louboutin's continued registration of the Contested Marks, as such registrations form the basis for Louboutin's meritless claims of, among other things, infringement, dilution, counterfeiting and unfair competition, and because such registrations are being cited by Louboutin in connection with its tortious interference with YSL's business relations with major retailers.

44. In light of the foregoing, the Court should declare Louboutin's purported marks invalid and cancelled pursuant to 28 U.S.C. §§ 2201 and 2202 and 15 U.S.C. §§ 1119 and 1064(3).

**Third Counterclaim**
**Cancellation of Marks under 15 U.S.C §§ 1119, 1064(3) [Functionality]**

45. YSL repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

46. The use of a red outsole on all-red shoes (or shoes where a red sole coordinates with other design elements) is functional, and as such, a red outsole trade dress is not eligible for trademark protection.

47. YSL is being and will continue to be damaged by Louboutin's continued registration of the Contested Marks, as such registrations form the basis for Louboutin's meritless claims of, among other things, infringement, dilution, counterfeiting and unfair competition, and because such registrations are being cited by Louboutin in connection with its tortious interference with YSL's business relations with major retailers.

48. In light of the foregoing, the Court should declare Louboutin's purported marks invalid and cancelled pursuant to 28 U.S.C. §§ 2201 and 2202 and 15 U.S.C. §§ 1119 and 1064(3).

**Fourth Counterclaim**
**Tortious Interference with Business Relations**

49. YSL repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

50. Louboutin has knowledge of YSL's particular and existing business relations with its high-end department store retailers, including Saks Fifth Avenue, Barneys New York, Bergdorf Goodman, Neiman Marcus and Neiman Marcus Direct.

51. Louboutin, as described above, has intentionally and maliciously interfered with YSL's business relationships by improper and wrongful means.

52. The acts of Louboutin, as described above, have damaged YSL in an amount to be determined at trial.

**Fifth Counterclaim**
**Unfair Competition**

53. YSL repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

54. Louboutin has, in bad faith, engaged in and continues to engage in unfair competition with YSL through a variety of improper means alleged herein.

55. As a result of Louboutin's conduct, YSL suffered significant losses, including unnecessary storage and shipping costs and lost revenue on returned inventory.

**Prayer for Relief**

**WHEREFORE,** Counterclaim-Plaintiffs respectfully request that this Court enter a judgment as follows:

(a) dismissing the Complaint in its entirety;

(b) canceling Louboutin's federal registrations for the Contested Marks;

(c) granting judgment in YSL's favor on all Counterclaims;

(d) awarding to YSL compensatory damages on its claims in an amount to be proven at trial, including up to three times the amount of compensatory damages assessed by the Court, as applicable;

(e) awarding to YSL their attorney's fees and expenses and the costs and disbursements of defending this action;

(f) awarding to YSL punitive damages on account of Louboutin's malicious, willful, tortious interference and unfair competition; and

(g) granting such other and further relief as the Court deems just and proper.

**ANSWER**

1. Admit that Louboutin purports to bring an action as described in Paragraph 1.

2. Admit that this Court has subject matter jurisdiction over this action.

3. Admit that this Court has personal jurisdiction over Yves Saint Laurent America, Inc. and Yves Saint Laurent America Holding, Inc.

4. Deny the allegations in Paragraph 4.

5. Admit that venue is proper in this District.

6. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6.

7. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

8. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, except deny that the red sole design functions as a trademark and that the "Red Sole Mark" is "world famous."

9. Deny the allegations in Paragraph 9, except admit that Yves Saint Laurent America, Inc. is a New York corporation with its principal place of business at 3 East 57th Street, New York, New York 10022 and is involved in the business of selling YSL products in the United States.

10. Admit the allegations in Paragraph 10.

11. Deny the allegations in Paragraph 11, except admit that Yves Saint Laurent S.A.S. is organized under the laws of France as a Société par Actions Simplifiée, has its principal place of business at 7, Avenue George V, Paris 75008, France, and is affiliated with Yves Saint Laurent America, Inc. and with Yves Saint Laurent America Holding, Inc.

12.     Deny the allegations in Paragraph 12.

13.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14.

15.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 .

16.     Deny the allegations in Paragraph 16.

17.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17.

18.     Deny the allegations in Paragraph 18, except admit that the images in Paragraph 18 purport to be examples of Christian Louboutin footwear.

19.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.

20.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, except deny that the red sole design functions as a trademark and that the "Red Sole Mark" is "distinctive."

21.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

22.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

23.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.

25. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.

26. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.

27. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, except deny that the red sole design functions as a trademark and that the "Red Sole Mark" is "well known."

28. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28.

29. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29, except deny that the red sole design functions as a trademark and that the "Red Sole Mark" is "renown[ed]."

30. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, except deny that the red sole design functions as a trademark.

31. Deny the allegations in Paragraph 31.

32. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32, except deny that the red sole design functions as a trademark and that the "Red Sole Mark" has any goodwill or brand recognition.

33. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.

34. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34.

35. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

36. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36, except deny that the red sole design functions as a trademark and that the "Red Sole Mark" has a reputation.

37. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37.

38. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38.

39. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39.

40. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40, except (*i*) admit that the quotation in Paragraph 40 appears in Exhibit B of the Complaint and (*ii*) deny that the red sole design functions as a trademark and that the "Red Sole Mark" is the signature of Louboutin footwear and is instantly recognizable.

41. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.

42. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42.

43. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, except deny that the red sole design functions as a trademark.

44. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44, except deny that the red sole design functions as a trademark and that a red sole on footwear is "distinctive."

45. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45, except (*i*) admit that Christian Louboutin applied to register a red sole trademark with the USPTO, (*ii*) respectfully refer to the USPTO file relating to such application for the full contents and details thereof, and (*iii*) deny that the red sole design functions as a trademark, that the "Red Sole Mark" has acquired distinctiveness, and that consumers associate the "Red Sole Mark" with Louboutin.

46. Respectfully refer to Exhibit A of the Complaint for the full contents thereof, except deny that the red sole design functions as a trademark.

47. Deny the allegations in Paragraph 47.

48. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48, except deny that the red sole design functions as a trademark.

49. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49, except deny that the red sole design functions as a trademark.

50. Deny the allegations in Paragraph 50, except (*i*) admit that YSL sells footwear models called the Tribute, the Tribtoo, the Palais and the Woodstock (the "YSL Footwear"), some of which are shown in Paragraph 50, and (*ii*) deny, on information and belief, that Louboutin first learned about YSL Footwear's red outsoles in January 2011.

51. Deny the allegations in Paragraph 51.

52. Deny the allegations in Paragraph 52, except (*i*) admit that the YSL Footwear was sold at Saks Fifth Avenue, Barneys New York, Bergdorf Goodman, Nordstrom and Neiman

Marcus and through the websites run by these same retailers, and (*ii*) deny, on information and belief, that Louboutin first learned about YSL Footwear's red outsoles in January 2011.

53. Deny the allegations in Paragraph 53, except admit that the YSL Footwear is sold on YSL's website at <www.ysl.com>, which is available around the world, and in YSL boutique stores, including the one located at 3 East 57th Street, New York, New York 10022.

54. Deny the allegations in Paragraph 54, except (*i*) admit that the parties exchanged correspondence prior to the commencement of this lawsuit and (*ii*) respectfully refer to such correspondence for the full contents thereof.

55. Deny the allegations in Paragraph 55 except (*i*) admit that the parties exchanged correspondence prior to the commencement of this lawsuit, (*ii*) respectfully refer to such correspondence for the full contents thereof, (*iii*) admit YSL brands are among the luxury brands owned by PPR, and (*iv*) admit that YSL continues to sell the YSL Footwear at retail and via the internet around the world.

56. Deny the allegations in Paragraph 56.

57. Admit that Louboutin has not authorized YSL to use any of Louboutin's marks but deny that the red sole design functions as a trademark and deny that the outsoles of YSL Footwear resemble Louboutin's claimed "Red Sole Mark."

58. Deny the allegations in Paragraph 58.

59. Deny the allegations in Paragraph 59.

**Count One**

60. Repeat and reallege each of their responses to the foregoing paragraphs as though fully set forth herein.

61. Deny the allegations in Paragraph 61.

62. Deny the allegations in Paragraph 62.

63. Deny the allegations in Paragraph 63.

64. Deny the allegations in Paragraph 64.

65. Deny the allegations in Paragraph 65.

**Count Two**

66. Repeat and reallege each of their responses to the foregoing paragraphs as though fully set forth herein.

67. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67, except deny that the YSL Footwear is "[i]nfringing."

68. Deny the allegations in Paragraph 68.

69. Deny the allegations in Paragraph 69.

70. Deny the allegations in Paragraph 70.

71. Deny the allegations in Paragraph 71.

**Count Three**

72. Repeat and reallege each of their responses in the foregoing paragraphs as though fully set forth herein.

73. Deny the allegations in Paragraph 73.

74. Deny the allegations in Paragraph 74.

75. Deny the allegations in Paragraph 75.

76. Deny the allegations in Paragraph 76.

77. Deny the allegations in Paragraph 77.

**Count Four**

78. Repeat and reallege each of their responses to the foregoing paragraphs as though fully set forth herein.

79. Deny the allegations in Paragraph 79.

80. Deny the allegations in Paragraph 80.

81. Deny the allegations in Paragraph 81.

82. Deny the allegations in Paragraph 82.

83. Deny the allegations in Paragraph 83.

**Count Five**

84. Repeat and reallege each of their responses to the foregoing paragraphs as though fully set forth herein.

85. Deny the allegations in Paragraph 85.

86. Deny the allegations in Paragraph 86.

87. Deny the allegations in Paragraph 87.

88. Deny the allegations in Paragraph 88.

89. Deny the allegations in Paragraph 89.

90. Deny the allegations in Paragraph 90.

**Count Six**

91. Repeat and reallege each of their responses to the foregoing paragraphs as though fully set forth herein.

92. Deny the allegations in Paragraph 92.

93. Deny the allegations in Paragraph 93.

94. Deny the allegations in Paragraph 94.

**Count Seven**

95.     Repeat and reallege each of their responses to the foregoing paragraphs as though fully set forth herein.

96.     Deny the allegations in Paragraph 96.

97.     Deny the allegations in Paragraph 97.

98.     Deny the allegations in Paragraph 98.

## General Denial

Unless otherwise specifically admitted herein, each and every allegation in the Complaint is hereby denied.

## Answer To Prayer For Relief

YSL specifically denies that Louboutin is entitled to the relief requested or to any other relief.

## First Affirmative Defense

Louboutin's claims are barred, in whole or in part, by the doctrine of unclean hands.

## Second Affirmative Defense

Louboutin's claims are barred, in whole or in part, by the doctrines of waiver, estoppel and laches.

## Third Affirmative Defense

Louboutin's claims are barred, in whole or in part, by the doctrine of fair use.

Dated: New York, New York
May 20, 2011

Respectfully submitted,

/s/ [David H. Bernstein]

David H. Bernstein (dhbernstein@debevoise.com)
Jyotin Hamid (jhamid@debevoise.com)
Jill van Berg (jvanberg@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
*Attorneys for Yves Saint Laurent America, Inc., Yves Saint Laurent America Holding, Inc., and Yves Saint Laurent S.A.S.*