UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTIAN LOUBOUTIN S.A.; CHRISTIAN LOUBOUTIN, L.L.C.; and CHRISTIAN LOUBOUTIN,

Plaintiffs,

v.

YVES SAINT LAURENT AMERICA, INC.; YVES SAINT LAURENT AMERICA HOLDING, INC.; YVES SAINT LAURENT S.A.S.; YVES SAINT LAURENT (an unincorporated association); JOHN AND JANE DOES A-Z (UNIDENTIFIED); and XYZ COMPANIES 1-10 (UNIDENTIFIED),

Defendants.

CIVIL ACTION NO.:  11 Civ. 2381 (VM)

DECLARATION OF ROBERT KLEIN IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION

**ROBERT KLEIN** hereby declares, pursuant to 28 U. S. C. § 1746, as follows:

1. I am the president and co-founder of Applied Marketing Science, Inc. ("AMS"), a market research and consulting firm with offices in Waltham, Massachusetts. While at AMS for the past 22 years, I have conducted market research on a wide range of consumer and business products and services. My *Curriculum Vitae*, which discusses my experience in detail, is attached as Appendix A to **Exhibit A** hereto, the *Expert Report of Robert L. Klein in the Matter of Christian Louboutin S.A., et al. v. Yves Saint Laurent America, Inc. et al.*:  *Trademark Confusion Methodology and Results* dated May 24, 2011 (the "Klein Report").

2. I submit this declaration in support of Plaintiffs Christian Louboutin S.A., Christian Louboutin, L.L.C. and Christian Louboutin's (collectively, "Louboutin") Application

ME1 11868524v.3

for a Preliminary Injunction against Defendants Yves Saint Laurent America, Inc., Yves Saint Laurent America Holding, Inc. and Yves Saint Laurent S.A.S. (collectively, "YSL").

3. Louboutin requested that I design, execute and analyze an Internet survey to measure the extent to which potential consumers of Louboutin and YSL footwear who observe a women wearing YSL shoes with red soles believe that such shoes are *CHRISTIAN LOUBOUTIN* brand shoes (the "Survey"). *See* Exhibit A at 2.

4. The Klein Report and the appendices thereto contain a comprehensive discussion of the methodology I used to design and conduct the Survey, as well as the Survey results. The Survery was designed in accordance with the relevant factors outlined in the *Manual for Complex Litigation* (4th edition) published in 2004 by the Federal Judicial Center. *See id.* at 3.

5. It is my opinion that, based on the Survey results, a substantial number of potential customers will be confused and believe that YSL shoes with red soles are Louboutin shoes.

6. 49.6% of the Survey respondents identified red-soled YSL shoes worn by a model as *CHRISTIAN LOUBOUTIN* shoes. 2.5% of the Survey respondents identified the same shoes with a black sole as *CHRISTIAN LOUBOUTIN* shoes. Thus, there is a net confusion rate of 47.1%. It is my understanding that a net confusion rate of 47.1% far exceeds the level probative of likelihood of confusion. *See* Exhibit A at 2.

7. 96% of the Survey respondents who identified the YSL shoe as a *CHRISTIAN LOUBOUTIN* shoe identified the red sole as a reason for their answer. The high level of confusion by the Survey respondents identifying the YSL shoe as a shoe from Louboutin is attributable to YSL's use of a bright red outsole. *See id.* at 3, 11.

ME1 11868524v.3

8.       It is also my opinion that the red soles are widely recognized as a source identifier and that they have acquired secondary meaning.  96% of the Survey respondents who stated that the YSL shoe was a *CHRISTIAN LOUBOUTIN* shoe identified the shoe's red sole as a reason for their answer.  More than half, 58%, of all Survey respondents indicated that the red sole served as a source identifier.  *See id.* at 3, 11-12.

I declare under penalties of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 21st day of June, 2011 in Waltham, Massachusetts.

*Robert L. Klein*
_____
Robert L. Klein