UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE MARRERO

| | |
|---|---|
| CHRISTIAN LOUBOUTIN S.A.; CHRISTIAN LOUBOUTIN, L.L.C.; and CHRISTIAN LOUBOUTIN, | X :<br>: CIVIL ACTION NO.:_____ |
| Plaintiffs, | : |
| v. | : |
| YVES SAINT LAURENT AMERICA, INC.; YVES SAINT LAURENT AMERICA HOLDING, INC.; YVES SAINT LAURENT S.A.S.; YVES SAINT LAURENT (an unincorporated association); JOHN AND JANE DOES A-Z (UNIDENTIFIED); and XYZ COMPANIES 1-10 (UNIDENTIFIED), | : 11 CIV 2381<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | X |

## DECLARATION OF KARA PFAFFENBACH IN SUPPORT OF PLAINTIFFS' APPLICATION TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION

**KARA PFAFFENBACH** hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Sales Manager for North America for Plaintiff Christian Louboutin, L.L.C. ("Louboutin LLC") and have held this position since September 2007. I submit this Declaration in support of the Application of Plaintiffs Christian Louboutin S.A., Louboutin LLC, and Christian Louboutin (collectively, "Plaintiffs") for a preliminary injunction against Defendants Yves Saint Laurent America, Inc., Yves Saint Laurent America Holding, Inc., Yves Saint Laurent S.A.S., Yves Saint Laurent, Jane and John Does A-Z and XYZ Companies 1-10 (collectively, "Defendants"). If called upon as a witness, I could testify as to all facts set forth in this declaration from my personal knowledge and/or my review of Plaintiffs' files.

2. I am a 1998 graduate of Otterbein College in Ohio, where I received a Bachelor of Fine Arts degree.

3.      Before joining Louboutin LLC, I was a wholesale manager at the footwear company Stephane Kélian in New York from 1998-2001; an account executive at Chanel in New York from 2002-2004; a senior account executive at the footwear and accessories company Sigerson Morrison in New York from 2004-2006; and a freelance consultant for similarly situated companies for a year prior to joining Louboutin LLC. As part of my job at these companies, I had to travel worldwide. I therefore have had thirteen years of experience in the promotion, distribution and sale of high fashion products in the United States and worldwide. As a result of this work experience, I was aware of the *CHRISTIAN LOUBOUTIN* brand luxury high fashion footwear and of their signature red outsoles for many years prior to my employment by Louboutin LLC.

4.      While working at Chanel, I visited the *CHRISTIAN LOUBOUTIN* store in Paris like it was a pilgrimage. I believed that *CHRISTIAN LOUBOUTIN* shoes were top of the line and that the red outsole on the shoes was ingenious. I considered women who wore *CHRISTIAN LOUBOUTIN* shoes, with the alluring glimpse of red on the sole, as very hip and chic. To me, these women were at the pinnacle of fashion.

5.      As Sales Manager for North America on behalf of Christian Louboutin S.A., I am in charge of wholesale accounts in the North American market, including sales to department stores like Neiman Marcus, Saks Fifth Avenue, Bergdorf Goodman, Barneys New York, Nordstrom, Holt Renfrew in Canada, and El Palacio de Hierro in Mexico.

6.      As part of my responsibilities at Louboutin LLC, I am very familiar with the promotion, distribution and sale of *CHRISTIAN LOUBOUTIN* footwear and with the strength and renown of the trademarks used by Plaintiffs in connection with footwear, including the lacquered red outsole used on virtually all of Plaintiffs' shoes (the "Red Sole Mark").

ME1 11389593v.1

7.      I know the department store buyers who I work with very well. I speak with them on a daily basis and routinely visit their stores. I present *CHRISTIAN LOUBOUTIN* footwear collections to them six times per year and help them determine which shoes to buy. In addition, I assist buyers with their budgets, and visit department stores all over the country in order to check on sales of *CHRISTIAN LOUBOUTIN* shoes and see how the stores are displaying the shoes.

8.      During the time that I have worked with these buyers, the stores have substantially increased the space provided to sell *CHRISTIAN LOUBOUTIN* footwear. Selling space or floor space is separately dedicated to brands such as ours and our competitors. This is quite different than the smaller specialty stores, which often will put shoes such as ours together with YSL and others on the same table in the shoe department. I am proud that as of today, our brand has more dedicated floor space in our department store client locations than any of our competitors. I am equally proud that *CHRISTIAN LOUBOUTIN* footwear is now the Number 1 in designer women's luxury shoes in each of these same locations.

9.      I first learned about the promotion and sale by Defendants of women's shoes with red outsoles in early January 2011 after seeing a photograph of the shoes taken by my colleague at the department store in the United Kingdom.

10.     After seeing this photograph, and notifing our legal department, I visited the New York City branches of Saks Fifth Avenue, Bergdorf Goodman and Barneys New York, the Bal Harbour, Florida branch of Neiman Marcus and the websites associated with each of these stores to see whether *YVES SAINT LAURENT* branded shoes with red outsoles were being offered for sale. I saw *YVES SAINT LAURENT* women's shoes with red outsoles (the "YSL Footwear") at each store that I visited and on each store's website. The outsoles on the YSL Footwear that I

3

saw were identical or very similar to the Red Sole Mark used by Plaintiffs on their women's shoes.

11.     I was surprised to find the YSL Footwear at Neiman Marcus, Saks Fifth Avenue, Bergdorf Goodman and Barneys New York. I routinely speak to the buyers at these stores about the Red Sole Mark and its association with the *CHRISTIAN LOUBOUTIN* brand. The buyers recognize that the red lacquered outsole on *CHRISTIAN LOUBOUTIN* footwear is Plaintiffs' signature mark, and that consumers also recognize it as such. Accordingly, these buyers are generally very sensitive to the use by third parties of red footwear outsoles. If the buyers of *CHRISTIAN LOUBOUTIN* shoes see that their department store retail inventory includes third party footwear using outsoles that resemble the Red Sole Mark, they usually notify me and I, in turn, notify Plaintiffs' legal department.

12.     Given this general practice, I called the buyers at Neiman Marcus, Saks Fifth Avenue, Bergdorf Goodman and Barneys New York who I am regularly in contact with to express my concern about the YSL Footwear. Virtually all of the buyers who I spoke with were surprised that *YVES SAINT LAURENT* shoes with red outsoles were on their shelves, and that Defendants used this outsole without Plaintiffs' authorization. I learned from these buyers that either other buyers at their stores who I do not have contact with purchased the YSL Footwear for the department stores, or Defendants did not show the buyers samples of the YSL Footwear shoes with red outsoles before the buyers ordered them. Accordingly, some of the buyers did not expect to receive *YVES SAINT LAURENT* shoes with red outsoles.

13.     I learned later that Neiman Marcus, Saks Fifth Avenue, Bergdorf Goodman and Barneys New York voluntarily pulled the YSL Footwear from their shelves and websites. I believe that the stores returned this product to Defendants.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York on April 5, 2011.

                                                        Kara Pfaffenbach