# Exhibit F



    

"New Piaf" $695        "Maggie" $930        "Cate Boot" $1295        "Candy" $835        "Lima" $1145

## Key Selling Tips                    ## Key Trends

- Meaning of the red sole: One of Christian's assistants used to paint her nails red while at work and when a shoe needed the perfect touch, Christian grabbed the nail polish and painted the sole red!!
- He has collaborated with designers such as Chloé , YSL, Alexander McQueen and Jean Paul Gaultier.
- Christian's career was examined during his first exhibition, Sole Desire: The shoes of Christian Louboutin, at the FIT Museum in New York in the Spring of 2008.

- Animal
- Boots/Booties with Hardware
- Red
- Shoes with Hardware
- Metallic's
- Statement Shoes

Confidential

## Core Elements

The Christian Louboutin collection includes: Espadrilles, Sandals, Boots, Booties, Pumps, Flats, and Evening shoes. There are also about 13 styles that make up the Basics collection in Neiman Marcus stores. The most interesting fabrics can be seen in each collection that is created. The most interesting and noteworthy additions to the collection is that on every pair of shoes, there is the infamous red sole!

## Heritage & History

In 1992, the Christian Louboutin brand was created and the first boutique was opened in Paris, France. In 1994, the first New York City boutique opened. In 2008, Christians work was examine by FIT in New York with his first exhibition - Sole Desire: The Shoes of Christian Louboutin. Today, the brand can be found in his 12 boutiques, 46 countries and of course Neiman Marcus!

## Theme of the Collection

Christian's inspirations come from 17th century frescoes. The Fall 2010 collection displays his creativity and it incorporates all of the current Neiman Marcus accessories trends!

## About: Christian Louboutin

Christian Louboutin was born in 1962 and raised during Paris' 12th arrondissement. At the age of 11, Christian began sketching shoes. In later years, he began an apprenticeship with Roger Viver, Chanel, YSL, and other prestigious fashion houses. In 1996 and 2008, Christian received a Fanny Award from the International Fashion Group. Gardening is one of Christian's favorite past times. Today, he lives between homes in Paris, Egypt, and his house boat in Cairo!

Confidential

Exhibit G

Execution copies delivered
to the parties on:

FRENCH REPUBLIC
IN THE NAME OF THE FRENCH PEOPLE

## COURT OF APPEAL OF PARIS
## Unit 5 - Chamber 1

### DECISION OF JUNE 22, 2011

(No. 165, 06 pages)

Registration number on the general docket: **09/00405**

Ruling brought before the Court: Judgment of November 4, 2008 – Court of First Instance of PARIS - RG [General Register] Docket No. 06/16750

### APPELLANT

**The company ZARA FRANCE, S.A.R.L.**
Acting in the person of its legal representatives
Having its registered office at 80 Avenue des Terroirs de France
75012 PARIS

represented by SCP ARNAUDY ET BAECHLIN, attorneys at the Court
assisted by Atty. Muriel ANTOINE-LALANCE, attorney at the bar of Paris, attorney
registration number: R64

### RESPONDENTS

**The company CHRISTIAN LOUBOUTIN,  S.A.**
in the person of its legal representatives
having its registered office at 19 rue Jean-Jacques
Rousseau 75001 PARIS

**Mr. Christian LOUBOUTIN**
domiciled at 24 rue Victor Massé
75009 PARIS

represented by SCP REGNIER-BEQUET-MOISAN, attorneys at the Court
assisted by Atty. Vincent LAFARGE, attorney at the bar of Paris, attorney
registration number: A780

**COMPOSITION OF THE COURT:**

Pursuant to the provisions of articles 786 and 910 of the code of civil procedure, the case was heard on May 9, 2011, in public hearing, since the attorneys did not object, before Mr. Didier PIMOULLE, Presiding Judge, in charge of investigating the case.

This magistrate has taken account of the oral arguments in the deliberation of the Court, made up of:

> Mr. Didier PIMOULLE, Presiding Judge
> Mrs. Brigitte CHOKRON, Judge
> Mrs. Anne-Marie GABER, Judge

**Clerk,** during the debates**:** Miss Aurélie GESLIN

**OPINION:**     - adversarial

- handed down by delivering the Opinion to the Office of the Clerk of the Court, the parties having previously been notified consistent with the conditions provided in the second paragraph of article 450 of the code of civil procedure.

- signed by Mr. Didier PIMOULLE, Presiding Judge, and Miss Aurélie GESLIN, clerk of court, to whom the original of this opinion was delivered by the signing magistrate.

***

**THE COURT,**

Having regard to the appeal filed by SARL Zara France from the judgment of the court of first instance of Paris (3rd chamber, 1st section, docket No.: 06/16750), handed down on November 4, 2008;

Having regard to the closing submissions of the appellant (April 5, 2011);

Having regard to the closing submissions (April 28, 2011) of Mr. Christian Louboutin and S.A. Christian Louboutin, respondents and interlocutory appellants;

Having regard to the closing order [*translator's note*: order closing the investigative phase of the proceeding] rendered on April 26, 2011;

* *

**ON THESE GROUNDS,**

Whereas Mr. Louboutin, designer of luxury shoes, holder of the international semi-figurative trademark representing a "shoe sole in the color red," filed with WIPO on May 23, 2001 under priority of the French trademark No. 00 3 067 674 filed on November 29, 2000 to designate shoes in class 25, and the company Christian Louboutin, presenting themselves as holders of a license contract allowing them to use this trademark, having found that the company Zara France (hereinafter: Zara) sold in its stores a model of women's shoes with a red sole, conducted several seizures for counterfeit and then sued this company on grounds of counterfeit and unfair competition;

Whereas the court, in the judgment under appeal, having dismissed the application filed

by the defendant company on grounds of nullity of the trademark claimed and forfeiture of the rights of its holder, judged that the risk of confusion had not been proven and consequently dismissed the claims of the plaintiffs based on counterfeit; it nevertheless accepted that, by using a red sole, Zara had imitated the company Christian Louboutin to unduly profit from its investments and maintain the confusion between its shoe models and those of Christian Louboutin and consequently ordered Zara to take various compensatory measures and to pay damages to the company Christian Louboutin;

Whereas Zara repeats before the court its arguments, first, that the trademark invoked against it is null and void; in the alternative, that the rights of the appellants on said trademark have been forfeited; in any event, seeks affirmation of the judgment under appeal to the extent that it found the absence of acts of counterfeit, but its reversal to the extent that it found acts of unfair and exploitative competition;

Whereas Mr. Louboutin and the company Christian Louboutin argue that the trademark is valid, claim that Zara should be found liable for counterfeit of this trademark, and seek an increase in damages awarded for unfair competition.

### The trademark challenged:

Whereas the action for counterfeit filed by Mr. Louboutin and the company Christian Louboutin is based on the trademark filed by Mr. Christian Louboutin with INPI [National Institute of Intellectual Property] on November 29, 2000 and registered under No. 00 3067674;

Whereas, in the registration application form for this trademark, in the field named "3 model of the trademark," there is the image of an irregular shape, oriented along the diagonal of the frame provided for this purpose, narrow in the lower right corner and widening towards the upper left corner, bright red in color, in the center of which there is, barely legible, the signature "Christian Louboutin" above a shield bearing the words "*vero cuiro*" [true leather] and the indications "*made in Italy*" and "39";

Whereas, under this image, in the field "4 Brief description of the trademark and its colors," the box "protected colors" is checked and "shoe sole in the color red" is indicated;

Whereas Zara rightly claims that this trademark does not meet the requirements, on the one hand, of clarity and precision and, on the other hand, of accessibility, intelligibility and objectiveness required both under European Community rules and jurisprudence and under articles L.711-1 et seq. of the code on intellectual property;

Whereas, indeed, first of all, the shape represented, as previously described, does not seem immediately identifiable as the representation of a sole and such interpretation may come to mind only when reading the description the applicant found useful to add;

Whereas, in particular concerning women's shoes in the category of those produced by Mr. Louboutin, the sole cannot be defined by a two-dimensional shape likely to be represented, like in the case at hand, by a flat figure, but by a camber, a thickness or other elements characterizing a three-dimensional shape that only an image in perspective is likely to render; in fact, it is impossible, when examining the figure filed, to determine whether it represents the exterior face or the interior face of the sole;

Whereas, in addition, supposing that that figure filed is identified with that of a sole, that its shape, to the extent that the top, which is larger, can be analyzed as corresponding to the front of the foot and the bottom, narrower, can be interpreted as the base of a high heel, it appears to be imposed by its nature or its function and does not include by itself

any distinctive character;

Whereas, concerning the red color claimed, it is not defined by a reference allowing its precise identification; the figure alleged to represent the sole has itself several shades of red, darker at the bottom right and in the middle, brighter at the top left where it has, distributed on the contour, six clearly lighter points or spots;

Whereas, finally, neither the shape nor the color of the mark filed are determined with sufficient clarity, precision and accuracy to give it a distinctive character that would allow identification of the origin of a shoe;

Whereas, in reality, it appears from the explanations given by Mr. Louboutin and the company Christian Louboutin that they intend to claim the idea itself, that they indicate that they were the first to use and characterize systematically the models they produce by a certain color of the exterior sole, a bright red that "pops," according to the expression used to convey the understanding that this color is made to immediately attract the eye;

Whereas, this circumstance is not contested; it results from numerous documents, articles or affidavits produced in court by the respondents that the specialized press and the knowledgeable public are able to associate a red sole with the creations of Mr. Louboutin;

Whereas, even so, even if the application of this design generally allows attribution to Mr. Louboutin of the creation of sophisticated women's shoes with red soles and thus to distinguish them from the competing shoes produced by other companies, it does not follow that the mark invoked, as described above, has in and of itself the properties of clarity, accuracy, precision, intelligibility and objectiveness and the distinctive character required so as to be considered a valid trademark;

Whereas, the respondents try in vain, by an intellectual artifice, to pass off the idea as a trademark by arguing that the trademark challenged has acquired, by custom, a notoriety that would be enough to protect it from any successful challenge; that the fame they wish to claim and which they demonstrate by the exhibits produced in court is actually related to the concept of the systematic use of a red sole to characterize a line of shoes, and not the disputed trademark;

Whereas, it is not without interest to note that, in order to remedy the weakness of the disputed trademark, Mr. Christian Louboutin found it necessary to file, in order to protect it more efficiently - supposing that it capable of being appropriated exclusively - the concept of the red sole as the distinctive sign of his creations, a new three-dimensional trademark specifying the pantone code of the color red used;

Whereas, it results from the above that trademark No.  00 3067674 is to be cancelled, by reversal of the judgment; consequently, an action in counterfeit by Mr. Louboutin and the company Christian Louboutin is inadmissible;


### _Unfair and exploitative competition_:

Whereas, the company Christian Louboutin blames Zara for deliberately trying, by systematically copying and borrowing elements that identify and personalize some of its models, to create confusion and for having misappropriated its investments in order to impair its position in the market (page 28 of its closing submissions);

Whereas, it blames the appellant, specifically, of having sold a model of an open toe shoe similar to the "Yo Yo" model with a red sole identical to that on which it claims to have acquired an exclusive monopoly through custom and reputation;

Whereas, the reference to the "Yo Yo" model is inconsequential, since it is a model devoid of originality and belonging, to the contrary - which the company Christian Louboutin does not deny - to the common stock of the world of women's shoes;

Whereas, it follows that the recognition of the validity of the claim so interpreted of the company Christian Louboutin would mean giving it the power to prohibit any person from marketing shoes with red soles;

Whereas, such a claim is manifestly excessive; the mere fact established in the foregoing reasons, that the knowledgeable public and the press may associate the name "Christian Louboutin" with a red sole does not justify the appropriation in perpetuity by the company Christian Louboutin of the concept consisting of systematically fitting women's shoes with red soles; indeed it is a matter of principle that ideas circulate freely;

Whereas, moreover, it is not claimed that the company Zara has used the red sole in the same systematic manner as the company Christian Louboutin claims it has done; the appellant argues, in fact, without being contradicted, that it markets mainly clothes and that, for it, selling shoes is only an ancillary and ephemeral activity;

Whereas, far from seeking to create confusion, as the company Christian Louboutin claims, the company Zara printed its name in very visible letters on the back of the soles of the model under investigation;

Whereas, moreover, that the alleged risk of confusion, rightly dismissed by the court, is not established, since the company Zara's shoes have been offered for sale only in its name stores at the price of 49 euro, an order of magnitude ten times lower than the price of Christian Louboutin shoes, found in points of sale that have nothing in common with the Zara stores;

Whereas, the two companies in question actually operate in two completely separate markets; the claims of the company Christian Louboutin on damage virtually caused by the marketing of the incriminated model to its position on the market of luxury shoes for women are not supported by any element in the debate;

Whereas, finally, the peremptory statement that the offering for sale of shoes with a red sole by the company Zara will lead to faster obsolescence of its own models, even though it is established by the documents produced by the appellant in the debate that many models of women's shoes with red soles were marketed by other designers and distributors before and after the company Christian Louboutin decided to appropriate this feature, has not been demonstrated;

Whereas, it follows from the foregoing that the judgment rendered will be reversed and all claims made by the company Christian Louboutin for the unfair and exploitative competition will be dismissed;

Whereas, the company Zara asks that company Christian Louboutin refund to it the sum of 105,000 euro paid as a provisional advance on damages, with interest at the legal rate from the date of payment;

But, whereas, this reversal decision constitutes the enforceable title that gives right to the refund and the amounts to be refunded bear interest at the legal rate from

the service, equivalent to notice, of the decision that gives right to the refund; it follows that there is no need to rule on the company Zara's request for refund;

\* \*

**WHEREFORE:**

REVERSES the judgment under appeal in its entirety,

RULING again,

DECLARES null trademark No. 00 3067674 filed on November 29, 2000 by Mr. Christian Louboutin and ORDERS the transmission of this decision to INPI by the court office;

DECLARES, consequently, that the action filed by Mr. Christian Louboutin and the company Christian Louboutin for counterfeit of said trademark is inadmissible,

DISMISSES the claims of the company Christian Louboutin based on unfair and exploitative competition,

STATES that there is no reason to rule on the company Zara France's petition to sentence the company Christian Louboutin to refund it the amount paid for the provisional execution of the judgment reversed,

ORDERS Mr. Christian Louboutin and the company Christian Louboutin to bear the costs of the lower court proceedings and of the appeal to the extent they are recoverable under article 699 of the code of civil procedure, and to pay to the company Zara France €20,000 pursuant to article 700 of the code of civil procedure.

**CLERK,**                                           **PRESIDING JUDGE,**

Grosses délivrées
aux parties le :

RÉPUBLIQUE FRANÇAISE
AU NOM DU PEUPLE FRANÇAIS

COUR D'APPEL DE PARIS
Pôle 5 - Chambre 1

ARRÊT DU 22 JUIN 2011

(n°165 , 06 pages)

Numéro d'inscription au répertoire général :  **09/00405**

Décision déférée à la Cour : Jugement  du 04 Novembre 2008 -Tribunal de Grande Instance de
PARIS - RG n° 06/16750

**APPELANTE**

**La société ZARA FRANCE, S.A.R.L.**
Agissant poursuites et diligences en la personne de ses représentants légaux
ayant son siège social 80 Avenue des Terroirs de France
75012 PARIS

représentée par la SCP ARNAUDY ET BAECHLIN, avoués à la Cour
assistée de Me Muriel ANTOINE-LALANCE, avocat au barreau de Paris, toque : R64

**INTIMÉS**

**La société CHRISTIAN LOUBOUTIN, S.A.**
prise en la personne de ses représentants légaux
ayant son siège social 19 rue Jean-Jacques Rousseau
75001 PARIS

**Monsieur Christian LOUBOUTIN**
demeurant 24 rue Victor Massé
75009 PARIS

représentés par la SCP REGNIER-BEQUET-MOISAN, avoués à la Cour
assistés de Me Vincent LAFARGE, avocat au barreau de Paris, toque : A780

**COMPOSITION DE LA COUR :**

En application des dispositions des articles 786 et 910 du code de procédure civile, l'affaire a été débattue le 09 Mai 2011, en audience publique, les avocats ne s'y étant pas opposés, devant Monsieur Didier PIMOULLE, Président, chargé d'instruire l'affaire.

Ce magistrat a rendu compte des plaidoiries dans le délibéré de la Cour, composée de :

Monsieur Didier PIMOULLE, Président
Madame Brigitte CHOKRON, Conseillère
Madame Anne-Marie GABER, Conseillère

**Greffier,** lors des débats : Melle Aurélie GESLIN

**ARRÊT :**        - contradictoire

- rendu par mise à disposition de l'arrêt au greffe de la Cour, les parties en ayant été préalablement avisées dans les conditions prévues au deuxième alinéa de l'article 450 du code de procédure civile.

- signé par Monsieur Didier PIMOULLE, président et par Mademoiselle Aurélie GESLIN, greffière à laquelle la minute du présent arrêt a été remise par le magistrat signataire.

***

**LA COUR,**

Vu l'appel relevé par la SARL Zara France du jugement du tribunal de grande instance de Paris (3ème chambre, 1ère section, n° de RG : 06/16750), rendu le 4 novembre 2008 ;

Vu les dernières conclusions de l'appelante (5 avril 2011) ;

Vu les dernières conclusions (28 avril 2011) de M. Christian Louboutin et de la S.A. Christian Louboutin, intimés et incidemment appelants ;

Vu l'ordonnance de clôture prononcée le 26 avril 2011 ;

* *

**SUR QUOI,**

Considérant que M. Louboutin, créateur de souliers de luxe, titulaire de la marque semi-figurative internationale représentant une « semelle de chaussure de couleur rouge », déposée à l'OMPI le 23 mai 2001 sous priorité de la marque française n° 00 3 067 674 déposée le 29 novembre 2000 pour désigner des chaussures en classe 25, et la société Christian Louboutin, se présentant comme titulaire d'un contrat de licence lui permettant d'exploiter cette marque, ayant constaté que la société Zara France (ci-après : Zara) commercialisait dans ses magasins un modèle de chaussure féminine comportant une semelle de couleur rouge, ont fait procéder à plusieurs saisies contrefaçon puis assigné cette société sur le fondement de la contrefaçon et celui de la concurrence déloyale ;

Que le tribunal, par le jugement dont appel, ayant écarté les fins de non recevoir tirées

par la société défenderesse de la nullité de la marque invoquée et de la déchéance des droits de son titulaire, a jugé que le risque de confusion n'était pas établi et a rejeté en conséquence les prétentions des demandeurs fondées sur la contrefaçon ; qu'il a en revanche admis qu' en utilisant une semelle rouge, la société Zara s'était inscrite dans le sillage de la société Christian Louboutin pour tirer indûment profit de ses investissements et entretenir une confusion entre ses modèles de chaussures et ceux de Christian Louboutin et condamné en conséquence la société Zara à diverses mesures réparatrices et à payer des dommages-intérêts à la société Christian Louboutin ;

Considérant que la société Zara reprend devant la cour, à titre principal, ses moyens de nullité de la marque qui lui est opposée, conclut subsidiairement à la déchéance des droits des appelants sur ladite marque, sollicite en toute hypothèse la confirmation du jugement en ce qu'il a constaté l'absence d'actes de contrefaçon mais son infirmation en ce qu'il a retenu des actes de concurrence déloyale et parasitaire ;

Considérant que M. Louboutin et la société Christian Louboutin concluent à la validité de la marque et réclament la condamnation de la société Zara au titre de la contrefaçon de cette marque plus l'augmentation des dommages-intérêts alloués au titre de la concurrence déloyale ;

### *Sur la marque opposée* :

Considérant que l'action en contrefaçon engagée par M. Louboutin et la société Christian Louboutin se fonde sur la marque déposée par M. Christian Louboutin à l'INPI le 29 novembre 2000 et enregistrée sous le n° 00 3067674 ;

Considérant que, sur le formulaire de demande d'enregistrement de cette marque, à l'emplacement intitulé « 3 modèle de la marque » se trouve l'image d'une forme irrégulière, orientée suivant la diagonale du cadre prévu à cet effet, étroite vers le coin inférieur droit et allant s'élargissant vers le coin supérieur gauche, de couleur rouge vif, au centre de laquelle s'inscrit, à peine lisible, la signature «Christian Louboutin » surmontant un écusson comportant la mention « *vero cuiro* » et les indications « *made in Italy* » et «39 » ;

Que, sous cette image, dans la rubrique « 4 Brève description de la marque et de ses couleurs », la case « déposée en couleurs » est cochée et il est mentionné «Semelle de chaussure de couleur rouge » ;

Considérant que la société Zara soutient à juste titre que cette marque ne répond pas aux exigences, d'une part, de clarté et de précision, d'autre part, d'accessibilité, d'intelligibilité et d'objectivité requises tant par les règles et la jurisprudence communautaires que par les articles L.711-1 et suivants du code de la propriété intellectuelle ;

Considérant en effet, en premier lieu, que la forme représentée, telle que précédemment décrite, n' apparaît pas immédiatement identifiable comme la représentation d'une semelle, cette interprétation ne pouvant venir à l'esprit qu'à la lecture de la mention descriptive que le déposant a jugé utile d'y adjoindre ;

Que, s'agissant particulièrement de souliers féminins entrant dans la catégorie de ceux produits par M. Louboutin, la semelle ne peut se définir par une forme en deux dimensions apte à être représentée, comme en l'espèce, par une figure à plat, mais par une cambrure, une épaisseur ou d'autres éléments caractérisant une forme tridimensionnelle que seule une image en perspective est susceptible de rendre ; qu'il est d'ailleurs impossible, à l'examen de la figure déposée, de déterminer si celle-ci représente la face extérieure ou la face intérieure de la semelle ;
Considérant en outre, à supposer la figure déposée identifiée comme celle d'une semelle, que sa forme, dans la mesure où la partie supérieure, plus large, peut s'analyser comme correspondant à l'avant du pied et la zone inférieure, rétrécie, s'interpréter comme la base d'un talon haut, apparaît dès lors imposée par sa nature ou sa fonction et ne comporte en elle-même

aucun caractère distinctif ;

Considérant, s'agissant de la couleur rouge revendiquée, que celle-ci n'est pas définie par une référence permettant de l'identifier avec précision ; que la figure censée représenter la semelle comporte elle-même plusieurs nuances de rouge, plus foncée à l'extrémité inférieure droite et en partie médiane, plus vive en partie supérieure gauche où elle présente, réparties sur le pourtour, six points ou taches nettement plus clairs ;

Considérant, en définitive, que ni la forme ni la couleur du signe déposé ne sont déterminées avec suffisamment de clarté, de précision et d'exactitude pour être de nature à lui conférer un caractère distinctif propre à permettre d'identifier l'origine d'une chaussure ;

Considérant, en réalité, qu'il résulte des explications de M. Louboutin et de la société Christian Louboutin qu'ils prétendent revendiquer en propre l'idée, qu'ils indiquent avoir été les premiers à mettre en œuvre, de caractériser de manière systématique les modèles qu'ils produisent par une certaine couleur de la semelle extérieure, un rouge vif « qui claque », selon l'expression employée pour faire comprendre que cette couleur est faite pour attirer immédiatement le regard ;

Considérant que cette circonstance n'est pas contestée ; qu'il résulte des nombreux documents, articles ou attestations versés au débat par les intimés que la presse spécialisée et le public averti se trouvent en mesure d'associer aux créations de M. Louboutin une semelle de couleur rouge ;

Considérant pour autant, même si l'application de ce concept permet d'attribuer généralement à M. Louboutin la création de souliers féminins sophistiqués munis de semelles de couleur rouge et de les distinguer ainsi des chaussures concurrentes produites par d'autres entreprises, qu'il n'en résulte pas que le signe opposé, tel que précédemment décrit, possède lui-même les propriétés de clarté, d'exactitude, de précision, d'intelligibilité et d'objectivité et le caractère de distinctivité requis pour qu'il puisse être retenu comme une marque valable ;

Considérant que les intimés tentent vainement, par un artifice intellectuel, de faire prendre l'idée pour la marque en faisant accroire que la marque opposée aurait acquis, par l'usage, une notoriété qui suffirait à la mettre à l'abri de toute contestation utile ; que la renommée dont ils entendent se prévaloir et qu'ils démontrent par les pièces qu'ils versent au débat s'attache en réalité au concept d'usage systématique d'une semelle rouge pour caractériser une gamme de chaussures, non à la marque litigieuse ;

Qu'il n'est pas sans intérêt, au demeurant, d'observer que M. Christian Louboutin, pour pallier la faiblesse de la marque contestée, a cru nécessaire de déposer, aux fins de protéger plus efficacement - à supposer qu'il soit susceptible d'appropriation exclusive - le concept de la semelle rouge comme signe distinctif de ses créations, une nouvelle marque tridimensionnelle précisant le code pantone de la couleur rouge utilisée ;

Considérant qu'il résulte de ce qui précède que la marque  n° 00 3067674 sera, par voie d'infirmation du jugement, annulée; que M. Louboutin et la société Christian Louboutin seront en conséquence déclarés irrecevables à agir sur le fondement de la contrefaçon de cette marque ;


### Sur la concurrence déloyale et le parasitisme :

Considérant que la société Christian Louboutin impute à faute à la société Zara d'avoir, par la copie et l'emprunt systématique des éléments qui identifient et personnalisent certains de leurs modèles, recherché délibérément la confusion et détourné ses investissements afin d'entamer sa position sur le marché (page 28 de ses dernières écritures) ;

Qu'elle reproche à l'appelante, en termes plus concrets, d'avoir mis en vente un modèle d'escarpin à bouts ouverts similaire à son modèle « Yo Yo » muni d'une semelle de couleur rouge identique à celle sur laquelle elle prétend avoir acquis, par l'usage et la notoriété, un monopole exclusif ;

Considérant que la référence au modèle « Yo Yo » est inopérante, s'agissant d'un modèle dépourvu de toute originalité et qui appartient au contraire - ce dont la société Christian Louboutin ne disconvient pas - au fonds commun de l'univers du soulier féminin ;

Considérant qu'il en résulte que la reconnaissance du bien fondé de la prétention ainsi traduite de la société Christian Louboutin reviendrait à lui conférer le pouvoir d'interdire à quiconque de commercialiser des chaussures munies de semelles de couleur rouge ;

Considérant qu'une telle prétention est manifestement exorbitante ; que la seule circonstance, établie dans les motifs qui précèdent, que le public averti et la presse spécialisée puissent associer la marque « Christian Louboutin » avec une semelle de couleur rouge ne justifie pas l'appropriation perpétuelle, par la société Christian Louboutin, du concept consistant à munir systématiquement les chaussures pour femmes de semelles de couleur rouge ; qu'il est en effet de principe que les idées sont de libre parcours ;

Considérant, au surplus, qu'il n'est pas prétendu que la société Zara aurait fait de la semelle de couleur rouge un usage systématique comme celui revendiqué par la société Christian Louboutin ; que l'appelante soutient en effet, sans être contredite, qu'elle commercialise principalement des vêtements et que la vente de chaussures n'est pour elle qu'une activité accessoire et éphémère ;

Que, loin de rechercher la confusion comme le soutient la société Christian Louboutin, la société Zara a frappé de son nom, en caractères très visibles, le dessous des semelles du modèle incriminé ;

Considérant, au demeurant, que le risque de confusion allégué, écarté à juste titre par le tribunal, n'est pas avéré, les chaussures de la société Zara n'ayant été mises en vente que dans les seuls magasins de son enseigne au prix de 49 euros, d'un ordre de grandeur dix fois inférieur au prix des chaussures Christian Louboutin, présentes dans des points de vente n'ayant rien de commun avec les magasins Zara ;

Considérant que les deux sociétés en cause opèrent en réalité sur deux marchés totalement distincts ; que les allégations de la société Christian Louboutin sur les atteintes virtuellement portées par la commercialisation du modèle incriminé à sa position sur le marché de la chaussure de luxe pour femme ne sont étayées par aucun élément du débat ;

Considérant enfin que l'affirmation péremptoire selon laquelle l'offre à la vente de chaussures à semelles de couleur rouge par la société Zara conduirait à l'obsolescence plus rapide de ses propres modèles, alors même qu'il est établi par les pièces versées au débat par l'appelante que de nombreux modèles de chaussures pour femme à semelles de couleur rouge ont été mises sur le marché par d'autres créateurs et distributeurs avant et depuis que la société Christian Louboutin a décidé de s'emparer de cette particularité, n'est nullement démontrée ;

Considérant qu'il résulte de tout ce qui précède que le jugement entrepris sera infirmé et la société Christian Louboutin déboutée de toutes ses demandes formées au titre de la concurrence déloyale et du parasitisme ;

Considérant que la société Zara demande la condamnation de la société Christian Louboutin à lui restituer la somme de 105.000 euros versée dans le cadre de l'exécution provisoire avec intérêts au taux légal à compter de la date du versement ;

Mais considérant que le présent arrêt infirmatif constitue le titre exécutoire ouvrant droit à restitution et que les sommes devant être restituées portent intérêt au taux légal à compter

de la signification, valant mise en demeure, de la décision ouvrant droit à restitution ; qu'il s'ensuit qu'il n'y a pas lieu de statuer sur la demande de restitution de la société Zara ;

* *

**PAR CES MOTIFS :**

INFIRME le jugement entrepris en toutes ses dispositions,

STATUANT à nouveau,

DÉCLARE nulle la marque n° 00 3067674 déposée le 29 novembre 2000 par M. Christian Louboutin et ORDONNE la transmission de la présente décision à l'INPI par les soins du greffe ;

DÉCLARE en conséquence M. Christian Louboutin et la société Christian Louboutin irrecevables en leur action fondée sur la contrefaçon de cette marque,

DÉBOUTE la société Christian Louboutin de ses demandes fondées sur la concurrence déloyale et le parasitisme,

DIT n'y avoir lieu de statuer sur la demande de la société Zara France tendant à voir condamner la société Christian Louboutin à lui restituer la somme versée à raison de l'exécution provisoire du jugement infirmé,

CONDAMNE M. Christian Louboutin et la société Christian Louboutin aux dépens de première instance et d'appel qui pourront être recouvrés conformément à l'article 699 du code de procédure civile et à payer à la société Zara France 20.000 € par application de l'article 700 du code de procédure civile.

**LE GREFFIER,**                                          **LE PRÉSIDENT,**



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOGOTA
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
CLEVELAND
COLUMBUS
DALLAS
DENVER
DUBAI
DUBLIN
DUESSELDORF
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
LYON
MEXICO CITY
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC
ZURICH

City of New York, State of New York, County of New York

I, Pearl Leo, hereby certify that the document "Zara France, S.A.R.L. v. Christian Louboutin, S.A. et al." is, to the best of my knowledge and belief, a true and accurate translation from French to English.

Pearl Leo

Sworn to before me this
July 11, 2011

Signature, Notary Public

KRISTIN MILORO
Notary Public - State of New York
No. 01MI6212799
Qualified in New York County
Commission Expires Oct 19, 2013

Notary

Stamp

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

Exhibit H

*M20070687*

**M**

*TRIBUNAL*
*DE GRANDE*
*INSTANCE*
*DE PARIS*
[PARIS COURT OF FIRST INSTANCE]
■

3rd chamber 3rd
section

Register [docket] No.:
06/06228

JUDGMENT
delivered on December 05, 2007

RECORD No.: [handwritten:] 16

Summons dated:
March 28, 2006

CLAIMANTS

Mr. Christian LOUBOUTIN
24 rue Victor Massé
75009 PARIS

S.A.R.L. LOUBOUTIN
19 rue Jean Jacques ROUSSEAU
75001 PARIS

represented by Vincent LAFARGE, Esq., attorney at law registered with the PARIS Bar, attorney
no. A780

DEFENDANTS

S.A.R.L. CESARE PACIOTTI
12 Avenue MONTAIGNE
75008 PARIS

PACIOTTI SPA
CIVITANOVA MARCHE (MC)
Via G. Cattolica 1
CAP 62012 INDUSTRIAL ZONE B

represented by Emmanuel BAUD, Esq., attorney at law registered with the PARIS Bar, attorney no.
T.09

COMPOSITION OF THE TRIBUNAL

Elisabeth BELFORT, Vice-President, *signing the judgment*
Agnès THAUNAT, Vice-President
Michèle PICARD, Vice-President,

with the assistance of Marie-Aline PIGNOLET, Clerk, *signing the judgment*

*Document issued from the legal library (CDPI) collections of the National Institute for Intellectual Property (INPI)*

Hearing of December 5, 2007
3rd Chamber 3rd Section
RG 06/06228

**PROCEEDINGS**

At the hearing of October 9, 2007, open to the public, before Elisabeth BELFORT and Michèle PICARD, reporting judges, who, without objection from counsel, were the only judges on the bench and who, after hearing counsel for the parties, reported thereon to the Court, in compliance with the provisions of Article 786 of New Code of Civil Procedure.

**JUDGMENT**

Handed down by delivering the order to the Clerk of Court
Both parties being present
Judgment at first instance

**THE FACTS AND THE PARTIES' ALLEGATIONS:**

Mr. Christian LOUBOUTIN is a luxury shoe designer. The models he creates are marketed by SARL CHRISTIAN LOUBOUTIN.

One of the characteristics of his models is that they have a red sole, including the interior face of the heel of the shoe.

Mr. LOUBOUTIN filed an application for an international, partially figurative trademark, on May 23, 2001, registered under no. 759326 subject to the priority of the French trademark application no. 00 3 067 674 filed on November 29, 2000, to designate shoes in Class 25.

The company CESARE PACIOTTI markets a line of shoe models with red soles.

Following a confiscation of counterfeit goods executed on March 15, 2006 in the Paris store of CESARE PACIOTTI, Mr. LOUBOUTIN and SARL CHRISTIAN LOUBOUTIN filed a claim against that company and PACIOTTI SPA on March 28, 2006, seeking damages for trademark counterfeit.

According to their latest pleadings dated October 2, 2007, Mr. LOUBOUTIN and his company petition the Court, pursuant to Articles L 711-1, L 711-2, L 712-1, L 713-1, L 713-2, L 713-3, L 716-1 and L 713-5 of the Code of Intellectual Property, and Article 1382 of the Civil Code:

- to find that by manufacturing, causing the manufacture of, and proposing for sale shoe models bearing a red sole, CESARE PACIOTTI and PACIOTTI counterfeited his trademark;

Hearing of December 5, 2007
3rd Chamber 3rd Section
RG 06/06228

- To order both companies to jointly pay to Mr. LOUBOUTIN the sum of Euro 100,000 as damages and to SARL CHRISTIAN LOUBOUTIN the sum of Euro 500,000 on the same grounds, as well as the sum of Euro 5,000 pursuant to Article 700 of the New Code of Civil Procedure;

- To order the destruction of all the counterfeited shoes marketed by CESARE PACIOTTI, and impose a per diem fine until the order has been executed;

Together with an order of immediate enforcement of the decision and authorization to publish the same.

The PACIOTTI companies state that they have designed, manufactured and marketed shoe models for many years, that the success of their models has enabled them to set up stores worldwide and that their reputation does not owe anything to Mr. LOUBOUTIN.

On the merits, the Defendants claim that:

- The company CHRISTIAN LOUBOUTIN's counterfeit action is inadmissible, as its license had not been recorded in the trademark register for the period prior to September 7, 2006 (the date of the license);

- The only signs that Mr. LOUBOUTIN uses as trademarks are the partially figurative trademark no. 2,246,080 (signature) and the figurative trademark no. 3,414,903 (stylized sole); however, none of the evidence shows that there was any serious use of the partially figurative trademark no. 3,064,674, the modified use thereof excluding it from consideration on those grounds;

- In any case, Mr. LOUBOUTIN's trademark no. 3,067,674 is null and void due to the lack of any color nuance allowing one to determine which red is protected, given that it is the color which, according to claimants, constitutes the predominant character of that trademark; additionally, that trademark does not constitute a valid sign as, in the public's eye, it does not allow the trademarked products to be differentiated from other products, the shape of the sole being customary, and its color appearing as a frequently used decorative sign, which does not allow the trademark to fulfill its function as a distinctive sign; moreover, Mr. LOUBOUTIN identifies his products with the partially figurative trademark no. 2,246,080, the sign of which is a stylized signature;

Hearing of December 5, 2007
3rd Chamber 3rd Section
RG 06/06228

- In addition, Mr. LOUBOUTIN'S registration of the trademark is fraudulent as its purpose is to deprive other shoe designers and manufacturers of the option to use the color red in all of its nuances as a decorative element on the sole of a shoe;

- No counterfeiting action may be attributed to them: there is no counterfeit through reproduction, because the differences between the signs are not insignificant (color nuance, dagger inside a black frame stamped on the shoe sole, absence of nominative element); neither is there imitation giving rise to a risk of confusion, in light of the public concerned and the differences cited above;

- The claims regarding violation of a recognized trademark are equally meritless because the red sole does not constitute a recognized trademark and the red sole was used as a decorative element and not as a distinctive sign;

- The claim of unfair competition or imitation must also be dismissed because that action is not based on any grounds distinct from those in the counterfeit action and liability and loss have not been proven;

- in any event there has been no proof of damages.

Furthermore, the PACIOTTI companies conclude by asking for the dismissal of the claims and, as a counterclaim, ask for the revocation of Mr. LOUBOUTIN's rights on the French trademark no. 3,067,674 as of November 30, 2005 or for it to be declared null and void, and alleging that the action brought against them is abusive, they claim as damages a sum of Euro 20,000 and a sum of Euro 10,000 pursuant to the provisions of Article 700 of the New Code of Civil Procedure.

**WHEREFORE**,

**\* regarding Claimants' rights:**

Mr. LOUBOUTIN has proved, through presentation of a pertinent certificate, that he is the holder of a complex trademark for which he applied on November 29, 2000 and registered under no. 00 3067674 to designate shoes in Class 25 of the International Classification.

The exclusive brand license for that trademark which was granted on June 30, 2006 by Mr. LOUBOUTIN to SARL CHRISTIAN LOUBOUTIN was recorded in the national trademark register on September 7, 2006.

Hearing of December 5, 2007
3rd Chamber 3rd Section
RG 06/06228

Hence, Mr. LOUBOUTIN's action in counterfeit for the French trademark referred to above is admissible. However, the company Christian LOUBOUTIN is entitled to bring a claim on these grounds only as of September 7, 2006 pursuant to Article L 714-7 of the Code of Intellectual Property, and thus it has no standing to bring a claim for damages for loss resulting from the alleged counterfeit for any period of time prior to that date.

**\* on the validity of French trademark no. 00 30677674:**

The PACIOTTI companies request the nullity of that trademark pursuant to Article L 711-1 of the Code of Intellectual Property, on the grounds that there is no mention, in the application for trademark, of the color nuance for which protection was claimed.

The Court, noting that the trademark in question is complex – it comprises a bright red shoe sole on which a "Christian Louboutin" signature is reproduced as well as the customary markings made on a sole (leather punch and shoe size) – considers that the lack of specificity regarding the color nuance for which protection is claimed is not a motive for nullity, since the distinctive nature of the trademark, even when it is described as a shoe sole in the color red, constitutes the combination of that color with the nominative element reproduced on the sole, a combination which allows the public to recognize the shoes bearing that sole as that of the Claimants.

**\* on the fraudulent application for registration of that trademark:**

The PACIOTTI companies claim that the application for the registration of that trademark was fraudulent because Mr. LOUBOUTIN allegedly wished to deprive his competitors of a color that is necessary in the context of their activity.

However, given that the trademark is complex, as indicated above, there is no proof of fraudulent registration, as the primary color "red" was not itself the subject of the application.

**\* on the marketing of that trademark:**

Article L 714-5 of the Code of Intellectual Property provides that the "*forfeiture of the owner's rights on a trademark may occur when, without any reasonable justification, that owner has not made serious use of the said trademark on the products and services specified in the application for registration over a continuous period of five years;*"

Hearing of December 5, 2007
3rd Chamber 3rd Section
RG 06/06228

It is not contested, and it has moreover been established by the record and in particular by the footwear provided, that since the date of the trademark application, SARL LOUBOUTIN has marketed with the authorization of Mr. LOUBOUTIN, its director, shoes bearing the soles that reproduce all of the characteristics of the brand submitted as the trademark, particularly the nominative element "Christian Louboutin", notwithstanding slight differences as regards the shape of the sole, which do not change the distinctive nature of the other components.

It is of little importance that Mr. LOUBOUTIN also possesses a "Christian Louboutin" signature trademark, and a "stylized red sole" trademark, as these trademarks have not been challenged in this instance.

In consequence, the request for revocation is rejected.

**\*on counterfeit:**

**\*by reproduction:**

The Court would point out that the trademark challenged is not composed uniquely of the color of the sole, but of the ensemble of the components described above; thus the counterfeit must be assessed by taking into consideration all of the elements appearing on the shoe sole produced by PACIOTTI. Since comparison of the two soles in question reveals differences between the brands that are not insignificant in the eyes of the relevant audience (presence of a dagger in relief inside a black frame, on the PACIOTTI sole), the claim of counterfeit by reproduction is unfounded.

**\*by imitation:**

Article L 713-3 of the Code of Intellectual Property provides that, if there exists a risk of confusion, the following is prohibited without prior authorization from the owner:   "b) the imitation of a trademark and the use of an imitated trademark, for identical or similar products or services as those designated under the registration."

It is well-established that whether there exists a risk of confusion must be assessed from a global standpoint, taking into consideration all of the relevant circumstances of the case. Regarding the visual, auditory or conceptual similarities of trademarks at issue, this global assessment must be based on the overall impression produced by the trademarks, while taking note in particular of their distinctive and dominant components.

Hearing of December 5, 2007
3rd Chamber 3rd Section
RG 06/06228

*\*on the products:*

The products designated by the trademark are identical to those claimed to be counterfeit.

*\*on the marks:*

The Claimants contend that the dominant and distinctive component of their trademark is the red color of the sole and that, moreover, Mr. LOUBOUTIN is known as the "red sole" man, a characteristic that is reproduced in all the styles he creates; that the mere adoption of this color by PACIOTTI constitutes an imitation likely to lead to confusion in those who appreciate luxury shoes, especially given the fact that the other components appearing on the PACIOTTI sole are not visually perceptible when the shoe is displayed for sale (*cf.* in advertising and in the store).

It is clear from press material in the record that the "blood" red color of the sole of the shoe styles created by Mr. LOUBOUTIN has become "his signature" and that accordingly, in the challenged French trademark, this color has become a dominant and distinctive component, as it is not perceived by the clientele that enjoys these luxury shoes to be a decorative component but rather a signifier associating this shoe to its creator, Mr. LOUBOUTIN.

However, it is also true that shoemakers have used colored soles for centuries, and that these are therefore perceived as specific decorative elements of the style in question, and the color red in all its tones is used to that effect (see shoe styles produced by the defense).

In the present case, the second signifier is constituted of a sole of a red color on which is reproduced a dagger in relief, within a black frame.

*\*on the risk of confusion:*

While it could be argued that the products claimed to be counterfeit are aimed at the same clientele as those of the LOUBOUTIN shoes, namely women who enjoy luxury shoes, and that they exhibit shared characteristics with the latter (stiletto heels, sophistication of the styles), it remains nonetheless true that this particularly discerning female

Hearing of December 5, 2007
3rd Chamber 3rd Section
RG 06/06228

clientele would not for an instant envisage that the PACIOTTI styles sold in boutiques under that signifier could have come from Mr. LOUBOUTIN's ateliers.

As indicated in the press material produced in the arguments, Mr. LOUBOUTIN creates more than 100 to 200 original styles each year, which are only sold in his company's boutiques, and with only a few thousands sold; these styles are appreciated by his clientele for their uniqueness.

Given the "house" distribution networks of the shoe styles sold by each of the parties and the existing differences between the marks (existence of a dagger in relief within a black frame, red of a different tone and lack of nominative element on the PACIOTTI styles), differences that would not escape the eye of the perceptive and wealthy clientele who would handle the shoe before purchasing it, there is no risk of confusion regarding the origin of the shoe.

Therefore, counterfeit by imitation has not been established.

**\*on causing injury to a recognized trademark:**

Article L 713-3 of the Code of Intellectual Property provides that "the use of a renowned trademark for products or services dissimilar to those designated in the registration gives rise to liability if it is susceptible of causing loss to the owner of the trademark or if this use constitutes an unjustified exploitation of the latter; the provisions of the previous paragraph are applicable to a highly recognizable trademark within the terms of article 6 bis of the Paris Convention, for the protection of the abovementioned industrial property."

It follows by virtue of application of the provision cited above, that a trademark that is recognized by a significant portion of the public in question for products and services provided by that trademark, enjoys protection against any reproduction or imitation if such use is of a nature that would cause loss to the owner of that recognized trademark or if such use constitutes an unjustified exploitation of the latter, regardless of whether the products and services of the second mark are identical, similar, or neither.

[initials]                                                                                          Page 8

Hearing of December 5, 2007
3rd Chamber 3rd Section
RG 06/06228

The Court notes that the Claimants have not provided any evidence allowing an assessment of the degree to which a female clientele that enjoys luxury shoes and recognizes the "red sole" trademark of Mr. LOUBOUTIN,  is capable of associating a shoe with Mr. LOUBOUTIN upon the mere presentation of a "blood red" sole.  Without a public opinion survey on this point, the Court considers that the evidence produced is insufficient to support the alleged renown.

Therefore, the claim based on this point is denied.

**\*on unfair competition and imitation:**

The Court notes that, although in the narrative of the briefs submitted by the Claimants there were arguments regarding alleged unfair competition and imitation by PACIOTTI, Claimants' pleadings do not include a request for relief on these grounds.

Mr. LOUBOUTIN and his company claim that, by using the red sole on a selection of its women's shoes, the PACIOTTI companies have exploited the popularity of his trademark, and thereby committed a violation under article 1382 of the Civil Code.

The Court notes that using a red sole for a range of shoe styles cannot give rise to any liability for unfair competition; the name CESARE PACIOTTI appears on all advertising photographs and in the advertising documents (catalogue), which eliminates any risk of confusion. Moreover, the defendants have not focused the promotion of their new range of style on the color of their soles, but have concentrated on the other components of the shoes in question and particularly on their interior leather. Finally, it appears from the components produced by the defendants that the color red was "in fashion" in 2006.

In consequence, the claim of unfair competition and imitation is unfounded.

**\*on the counterclaim:**

It is well-established that the filing of a legal claim may only give rise to a request for damages in the event of malice, bad faith or a gross error equivalent to  a tort.

[initials]

Hearing of December 5, 2007
3rd Chamber 3rd Section
RG 06/06228

In this case, given that Mr. LOUBOUTIN was the owner of a "red sole" trademark, the commencement of these proceedings, which rests on a single error of law, is not abusive.

**\*on the other petitions:**

Equitable considerations do not require the application of article 700 of the New Code of Civil Procedure in this case.

**FOR THESE REASONS THE COURT,**
**by an *inter partes* decision at first instance submitted to the clerk, under provisional execution,**

States that SARL LOUBOUTIN is not entitled to raise claims for the period prior to September 7, 2006;

Rejects the claims of both parties,

Orders that Mr. LOUBOUTIN and SARL LOUBOUTIN jointly bear the costs of the proceeding,

Applies the provisions of article 699 of the New Code of Civil Procedure to *Maître* Emmanuel BAUD, lawyer, for that portion of costs incurred without advance payment.

Decision handed down in Paris, December 5, 2007,

The Clerk                                    The President
[Signature]                                  [Signature]

*M20070687*

**M**

**TRIBUNAL
DE GRANDE
INSTANCE
DE PARIS**

■

3ème chambre 3ème
section

N° RG :
06/06228

N° MINUTE : 16

Assignation du :
28 Mars 2006

**JUGEMENT
rendu le 05 Décembre 2007**

**DEMANDEURS**

**Monsieur Christian LOUBOUTIN**
24 rue Victor Massé
75009 PARIS

**S.A.R.L. LOUBOUTIN**
19 rue Jean Jacques ROUSSEAU
75001 PARIS

représentés par Me Vincent LAFARGE, avocat au barreau de PARIS,
vestiaire A 780

**DÉFENDERESSES**

**S.A.R.L. CESARE PACIOTTI**
12 Avenue MONTAIGNE
75008 PARIS

**Société PACIOTTI SPA**
CIVITANOVA MARCHE (MC)
Via G. Cattolica 1
   CAP 62012 ZONE INDUSTRIELLE B

représentées par Me Emmanuel BAUD, avocat au barreau de PARIS,
vestiaire T.09

**COMPOSITION DU TRIBUNAL**

Elisabeth BELFORT, Vice-Président, *signataire de la décision*
Agnès THAUNAT, Vice-Président
Michèle PICARD, Vice-Président,

assistée de Marie-Aline PIGNOLET, Greffier, *signataire de la décision*

**Page 1**

*Document issu des collections du CDPI de l'INPI*

Audience du 5 Décembre 2007
3ème Chambre 3ème Section
RG 06/06228

## DÉBATS

A l'audience du 9 Octobre 2007, tenue publiquement, devant Elisabeth BELFORT, Michèle PICARD, juges rapporteurs, qui, sans opposition des avocats, ont tenu seules l'audience, et, après avoir entendu les conseils des parties, en ont rendu compte au Tribunal, conformément aux dispositions de l'article 786 du Nouveau Code de Procédure Civile

## JUGEMENT

Prononcé par remise de la décision au greffe
Contradictoire
en premier ressort

## FAITS ET PRETENTIONS DES PARTIES:

Monsieur Christian LOUBOUTIN est un créateur de souliers de luxe. Les modèles qu'il crée sont commercialisés par la SARL CHRISTIAN LOUBOUTIN.

Une des caractéristiques de ces modèles sont leur semelle de couleur rouge y compris la face intérieure du talon de la chaussure.

M. LOUBOUTIN a déposé une marque semi-figurative internationale le 23 mai 2001 enregistrée sous le n° 759326 sous priorité de la marque française n° 00 3 067 674 déposée le 29 novembre 2000 pour désigner les chaussures en classe 25.

La société CESARE PACIOTTI commercialise un ligne de modèles de chaussures avec des semelles rouges.

Suite à une opération de saisie-contrefaçon réalisée le 15 mars 2006 dans la boutique parisienne de la société CESARE PACIOTTI, M. LOUBOUTIN et la SARL CHRISTIAN LOUBOUTIN ont assigné le 28 mars 2006 cette société et la société PACIOTTI SPA en contrefaçon de marque et en indemnisation.

Aux termes de leurs dernières conclusions en date du 2 octobre 2007, M. LOUBOUTIN et sa société demandent au tribunal au visa des articles L 711-1, L 711-2, L 712-1, L 713-1, L 713-2, L 713-3, L 716-1 et L 713-5 du Code de Propriété Intellectuelle et 1382 du code civil:

-constater qu'en fabriquant, faisant fabriquer et proposant à la vente des modèles de soulier comportant une semelle rouge, les sociétés CESARE PACIOTTI et PACIOTTI ont contrefait sa marque;

**Page 2**

Audience du 5 Décembre 2007
3ème Chambre 3ème Section
RG 06/06228

-condamner in solidum ces deux sociétés à payer à M.
LOUBOUTIN une somme de 100.000 euros à titre de dommages
et intérêts et à la SARL CHRISTIAN LOUBOUTIN une somme
de 500.000 euros de ce chef ainsi que celle de 5000 euros en
application de l'article 700 du Nouveau Code de Procédure
Civile ;

-ordonner la destruction de toutes les chaussures
contrefaisantes commercialisées par la société CESARE
PACIOTTI sous astreinte,

le tout assorti de l'exécution provisoire et de l'autorisation de
publication de la décision.

Les société PACIOTTI exposent qu'elles conçoivent,
fabriquent et commercialisent des modèles de chaussures depuis
de nombreuses années; que le succès que rencontrent leurs
modèles les a conduites à implanter des boutiques dans le monde
entier; que leur notoriété ne doit rien à M. LOUBOUTIN.

Sur le fond , les défenderesses soutiennent que:

-la société CHRISTIAN LOUBOUTIN est irrecevable à
agir en contrefaçon , faute d'inscription de sa licence au registre
des marques pour la période antérieure au 7 septembre 2006, date
de celle-ci;

-les seuls signes dont M. LOUBOUTIN effectue une
exploitation à titre de marque sont la marque semi-figurative n°
2 246 080 (signature) et la marque figurative n° 3 414 903
(semelle stylisée); en revanche aucune pièce ne justifie d'une
exploitation sérieuse de la marque semi-figurative n° 3 064 674,
l'exploitation altérée qui en est faite ne pouvant être prise en
compte de ce chef;

-en tout état de cause, la marque n° 3 067 674 de M.
LOUBOUTIN est nulle en l'absence de nuance de couleur
permettant d'identifier quel rouge est protégé, étant relevé que
c'est la couleur qui constitue d'après les demandeurs l'élément
dominant de cette marque; de plus, cette marque ne constitue pas
un signe valable car il ne permet par de distinguer aux yeux du
public les produits marqués des autres, la forme de la semelle
étant usuelle et sa couleur apparaissant comme un signe décoratif
fréquemment utilisé qui ne permet pas à la marque de remplir sa
fonction de signe distinctif; d'ailleurs M. LOUBOUTIN identifie
ses produits par la marque semi-figurative n° 2 246 080 dont le
signe est une signature stylisée;

Page 3

Audience du 5 Décembre 2007
3ème Chambre 3ème Section
RG 06/06228

-de plus, le dépôt par M. LOUBOUTIN de la marque opposée est frauduleux car il a pour finalité de priver les autres concepteurs et fabricants de chaussures de la faculté d'utiliser la couleur rouge dans toutes ses nuances pour des semelles de chaussures à titre décoratif;

-aucun acte de contrefaçon ne peut leur être reproché: il ne peut y avoir contrefaçon par reproduction, les différences entre les signes n'étant pas insignifiantes ( nuance de couleur, poignard apposé sur la semelle encadré de noir, absence de l'élément dénominatif ); il n'y a pas non plus imitation entraînant un risque de confusion, eu égard au public concerné et aux différences précitées;

-les demandes sur l'atteinte à la marque renommée sont également mal-fondées car la semelle rouge ne constitue par une marque renommée et l'emploi d'une semelle rouge a été faite à titre décoratif et non comme à titre de signe distinctif;

-l'action fondée sur la concurrence déloyale ou le parasitisme doit également être rejetée car elle n'est pas fondée sur des griefs distincts de celle en contrefaçon  et la faute et le préjudice ne sont pas démontrés;

-en tout état de cause, il n'y a pas de préjudice justifié.

Aussi, les société PACIOTTI concluent au débouté des demandes et reconventionnellement sollicitent la déchéance des droits de M. LOUBOUTIN sur la marque française n° 3 067 674 à compter du 30 novembre 2005 ou la nullité de celle-ci et estimant la procédure engagée à leur encontre abusive, réclament l'allocation d'une indemnité de 20.000 euros à titre de dommages et intérêts et celle de 10.000 euros en application de l'article 700 du Nouveau Code de Procédure Civile .

**SUR CE,**

**\*sur les droits des demandeurs:**

M. LOUBOUTIN justifie par la production du certificat correspondant être titulaire d'une marque complexe déposée le 29 novembre 2000 et enregistrée sous le n° 00 3067674 pour désigner des chaussures en classe 25 de la classification internationale.

La licence exclusive d'exploitation de cette marque consentie le 30 juin 2006 par M. LOUBOUTIN à la SARL CHRISTIAN LOUBOUTIN a été inscrite au registre national des marques le 7 septembre 2006.

**Page 4**

Audience du 5 Décembre 2007
3ème Chambre 3ème Section
RG 06/06228

Dès lors, M. Christian LOUBOUTIN est recevable à agir en contrefaçon du chef de la marque française précitée . En revanche, la société Christian Louboutin n'est recevable de ce chef qu'à compter du 7 septembre 2006 en application de l'article L 714-7 du Code de Propriété Intellectuelle et est donc irrecevable à solliciter la réparation du préjudice résultant de la contrefaçon alléguée pour la période antérieure à cette date.

**\*sur la validité de la marque française n° 00 30677674:**

Les sociétés PACIOTTI sollicitent la nullité de cette marque en application de l'article L 711-1 du Code de Propriété Intellectuelle faute de précision dans le dépôt sur la nuance de couleur dont la protection est revendiquée.

Le tribunal relevant que cette marque est complexe- elle est constituée d'une semelle de chaussure de couleur rouge vif sur laquelle est reproduite une signature "Christian Louboutin" ainsi que les mentions habituelles sur une semelle (le poinçon cuir et la pointure) considère que l'absence de précision dans la nuance de la couleur dont la protection est revendiquée n'est pas une cause de nullité, la distinctivité de la marque même si elle est décrite comme une semelle de chaussure de couleur rouge étant constituée par la combinaison de cette couleur avec l'élément dénominatif reproduit sur la semelle, combinaison qui permet au public concerné d'attribuer les chaussures revêtues de cette semelle aux demandeurs.

**\*sur le dépôt frauduleux de cette marque:**

Les sociétés PACIOTTI considèrent que le dépôt de cette marque est frauduleux car M. LOUBOUTIN aurait ainsi voulu priver ses concurrents d'une couleur nécessaire dans le cadre de leur activité.

Dès lors que la marque est complexe, ainsi qu'il a été dit précédemment, le dépôt frauduleux n'est pas justifié, la couleur primaire "rouge" n'ayant pas été déposée en tant que telle.

**\*sur l'exploitation de cette marque:**

L'article L 714-5 du Code de Propriété Intellectuelle dispose qu'*encourt la déchéance de ses droits le propriétaire de la marque qui, sans justes motifs, n'en a pas fait un usage sérieux, pour les produits et services visés dans l'enregistrement pendant une période ininterrompue de cinq ans;*

Page 5

Audience du 5 Décembre 2007
3ème Chambre 3ème Section
RG 06/06228

Il n'est pas contesté et il est établi au surplus par les pièces produites aux débats et notamment par la chaussure communiquée que la SARL LOUBOUTIN commercialise avec l'autorisation de M. LOUBOUTIN , son gérant, depuis la date du dépôt de la marque des modèles de souliers comportant les semelles reproduisant l'ensemble des caractéristiques du signe déposé à titre de marque et notamment l'élément dénominatif "Christian Louboutin", les légères différences tenant à la forme de la semelle n'altérant pas le caractère distinctif des autres éléments.

Il importe peu que M. LOUBOUTIN soit également titulaire d'une marque signature "Christian Louboutin" et d'une marque "semelle rouge stylisée", ces titres n'étant pas présentement opposés.

Dès lors, la demande en déchéance est rejetée.

*sur la contrefaçon:

*par reproduction:

Le tribunal relève que la marque opposée n'est pas constituée uniquement par la couleur de la semelle mais par l'ensemble des éléments décrits ci-avant; aussi la contrefaçon doit s'apprécier en prenant en compte l'ensemble des éléments figurant sur la semelle des sociétés PACIOTTI. Dès lors que la comparaison des deux semelles en cause permet d'identifier des différences entre les signes  qui ne sont pas pour le public concerné insignifiantes (présence d'un poignard en relief encadré de noir sur la semelle PACIOTTI), le grief de contrefaçon par reproduction n'est pas fondé.

*par imitation:

L'article L 713-3 du Code de Propriété Intellectuelle dispose que sont interdits , sauf autorisation du propriétaire s'il peut en résulter un risque de confusion dans l'esprit du public ...b)l'imitation d'une marque et l'usage d'une marque imitée , pour des produits ou services identiques ou similaires à ceux désignés dans l'enregistrement.

Il est constant que le risque de confusion doit être apprécié globalement en tenant compte de tous les facteurs pertinents de l'espèce. Cette appréciation globale doit en ce qui concerne la similitude visuelle, auditive ou conceptuelle des marques en cause être fondée sur l'impression d'ensemble produites par les marques en tenant compte notamment des éléments distinctifs et dominants de celles-ci .

Page 6

Audience du 5 Décembre 2007
3ème Chambre 3ème Section
RG 06/06228

**\*sur les produits:**

Les produits désignés par la marque sont identiques à ceux argués de contrefaçon.

**\*sur les signes:**

Les demandeurs soutiennent que l'élément dominant et distinctif de leur marque est la couleur rouge de la semelle et que d'ailleurs M. LOUBOUTIN est connu comme l'homme aux "semelles rouges", caractéristique qui est reproduite sur tous les modèles qu'il crée; que la simple reprise de cette couleur par la société PACIOTTI constitue une imitation susceptible d'entraîner une confusion chez les amateurs de chaussures de luxe et ce, d'autant que les autres éléments figurant sur la semelle PACIOTTI ne sont pas perceptibles visuellement quand la chaussure est offerte en vente (cf documents publicitaires et en magasin).

Il ressort des articles de presse produits aux débats que la couleur rouge "sang" des semelles des modèles de chaussures créés par M. LOUBOUTIN est devenue "sa signature" et que dès lors dans la marque française opposée, cette couleur est devenue un élément dominant et distinctif car elle n'est pas perçue par la clientèle amateur de ces chaussures de luxe comme un élément décoratif mais comme un signe rattachant la chaussure à son créateur M. LOUBOUTIN.

Toutefois, il est également acquis que depuis des siècles les créateurs de chaussures ont utilisé des semelles de couleur et que celles-ci sont alors perçues comme un signe décoratif particulier du modèle en cause, le rouge dans toutes ces nuances étant une couleur utilisée à cet effet (cf modèles de chaussures produits en défense).

En l'espèce, le signe second est constitué d'une semelle de couleur rouge sur laquelle est reproduit un poignard en relief dans un encadré noir.

**\*sur le risque de confusion:**

S'il n'est pas contestable que les produits argués de contrefaçon visent la même clientèle que celle des chaussures LOUBOUTIN à savoir la clientèle des femmes amateurs de chaussures de luxe et présentent des caractéristiques communes avec ces dernières ( talons aiguilles, sophistication des modèles), il n'en demeure par moins que cette clientèle féminine

Page 7

Audience du 5 Décembre 2007
3ème Chambre 3ème Section
RG 06/06228

particulièrement avertie n'envisagera pas un instant que les modèles des sociétés PACIOTTI commercialisés dans des boutiques sous cette enseigne aient pour origine les ateliers de M. LOUBOUTIN.

Comme il est indiqué dans les articles de presse produits aux débats M. LOUBOUTIN crée chaque année plus de 100 à 200 modèles originaux qui ne sont commercialisés que dans les boutiques de sa société à quelques milliers d'exemplaires; que ces modèles sont appréciés de sa clientèle du fait de leur originalité.

Compte-tenu des réseaux de distribution "maison" des modèles de chaussures commercialisés par chacune des parties et des différences existantes entre les signes (existence d'un poignard en relief encadré de noir, rouge d'une nuance différente et absence d'élément dénominatif sur les modèles PACIOTTI) différences qui ne sauraient échapper à une clientèle exigeante et fortunée qui manipulera la chaussure avant de l'acquérir, le risque de confusion sur l'origine de celle-ci n'existe pas.

Dès lors, la contrefaçon par imitation n'est pas constituée.

**\*sur l'atteinte à la marque renommée:**

L'article L 713-5 du Code de Propriété Intellectuelle dispose *que l'emploi d'une marque jouissant d'une renommée pour les produits ou services non similaires à ceux désignés dans l'enregistrement engage la responsabilité civile de son auteur s'il est de nature à porter préjudice au propriétaire de la marque ou si cet emploi constitue une exploitation injustifiée de cette dernière; que les dispositions de l'alinéa précédent sont applicables à l'emploi d'une marque notoirement connue au sens de l'article 6 bis de la Convention de Paris, pour la protection de la propriété industrielle précitée.*

Il est constant en application de l'article précité qu'une marque qui est connue d'une partie significative du public concerné par les produits et services couverts par elle bénéficie d'une protection contre toute reproduction ou imitation si cet usage est de nature à porter préjudice au propriétaire de cette marque renommée ou si cet emploi constitue une exploitation injustifiée de celle-ci, les produits et services désignés par le signe second pouvant être indifféremment non identiques, non similaires, identiques ou similaires.

Page 8

Audience du 5 Décembre 2007
3ème Chambre 3ème Section
RG 06/06228

Le tribunal relève que les demandeurs ne versent aux débats aucune pièce permettant d'apprécier en pourcentage quelle est la part de la clientèle féminine amateur de chaussures de luxe qui connaît la marque "semelle rouge" de M.LOUBOUTIN et qui est capable de rattacher à la seule présentation d'une chaussure à la semelle "rouge sang" celle-ci à M. LOUBOUTIN. Faute de sondage d'opinion sur ce point , le tribunal considère que les pièces produites sont insuffisantes pour démontrer cette renommée.

Dans ces conditions, la demande formée sur ce fondement est rejetée.

*sur la concurrence déloyale et le parasitisme:

Le tribunal relève que si dans le corps des conclusions du demandeurs figurent des développements sur les actes de concurrence déloyale et de parasitisme reprochés aux sociétés PACIOTTI, aucune condamnation n'est reprise dans le dispositif de ces écritures de ce chef.

M. LOUBOUTIN et sa société font grief aux sociétés PACIOTTI d'avoir, en reprenant une semelle rouge sur un ensemble de chaussures féminines, exploité la notoriété de sa marque et ainsi commis une faute au sens de l'article 1382 du code civil.

Le tribunal relève que la reprise d'une semelle rouge sur une gamme de modèles de chaussure ne saurait fonder un grief de concurrence déloyale ; la dénomination CESARE PACIOTTI figure sur l'ensemble des photographies publicitaires et sur les documents publicitaires (catalogue) ce qui écarte tout risque de confusion. Par ailleurs, les défenderesses n'ont nullement axé la promotion de leur nouvelle gamme de modèles sur la couleur de leur semelle, celle-ci étant d'ailleurs reprise sur d'autres éléments des chaussures litigieuses et notamment sur le cuir intérieur. Il apparaît enfin  des éléments produits en défense que la couleur rouge était "tendance" en 2006.

Dans ces conditions, le grief de concurrence déloyale et de parasitisme n'est pas fondé.

*sur les demandes reconventionnelles:

Il est constant que l'exercice d'une action en justice ne dégénère en abus pouvant donner naissance à une demande en dommages et intérêts que dans le cas de malice, de mauvaise foi ou d'erreur grossière équipollente au dol.

Page 9



Audience du 5 Décembre 2007
3ème Chambre 3ème Section
RG 06/06228

En l'espèce, dès lors que M. LOUBOUTIN était titulaire
d'une marque "semelle rouge" , l'introduction de la présente
instance qui repose sur une simple erreur de droit n'est pas
abusive.

**\*sur les autres demandes:**

Aucune considération d'équité ne commande de faire
application de l'article 700 du Nouveau Code de Procédure Civile
en l'espèce.

**PAR CES MOTIFS LE TRIBUNAL ,**
statuant contradictoirement , par décision en premier ressort
et remise au greffe,
sous le bénéfice de l'exécution provisoire,

Dit que la SARL LOUBOUTIN est irrecevable à agir en
contrefaçon pour la période antérieure au 7 septembre 2006;

Déboute les parties de leurs demandes,

Condamne in solidum M. LOUBOUTIN et la SARL
LOUBOUTIN aux dépens,

Fait application des dispositions de l'article 699 du Nouveau
Code de Procédure Civile au profit de Maître Emmanuel BAUD ,
avocat, pour la part des dépens dont il a fait l'avance sans en avoir
reçu préalablement provision,

Fait et Jugé à Paris, le 5 décembre 2007,

Le Greffier                                        Le Président

Page 10



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOGOTA
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
CLEVELAND
COLUMBUS
DALLAS
DENVER
DUBAI
DUBLIN
DUESSELDORF
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
LYON
MEXICO CITY
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC
ZURICH

City of New York, State of New York, County of New York

I, Sara Hutchison, hereby certify that the document "Christian Louboutin et al. v. S.A.R.L. Cesare Paciotti et al." is, to the best of my knowledge and belief, a true and accurate translation from French to English.

Sara Hutchison

Sworn to before me this
Monday, July 11, 2011

Signature, Notary Public

KRISTIN MILORO
Notary Public - State of New York
No. 01MI6212799
Qualified in New York County
Commission Expires Oct 19, 2013

Stamp, Notary Public