

July 29, 2011

BY HAND DELIVERY

Honorable Victor Marrero
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:    Christian Louboutin S.A., *et al.* v. Yves Saint Laurent America, Inc., *et al.*,
       Civil No. 11-cv-02381-VM

Harley I. Lewin
Partner
T. 212.609.6818
F. 212.602.0122
HLewin@mccarter.com

McCarter & English, LLP
245 Park Avenue
27th Floor
New York, NY  10167-0001
T. 212.609.6800
F. 212.609.6921
www.mccarter.com

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

Dear Judge Marrero:

Louboutin claims that five models of YSL shoes (four identified in the Complaint and one discovered after filing) infringe upon Louboutin's registered red outsole trademark, U.S. Reg. No. 3,361,597 ("Red Sole Mark").[1]  Louboutin has used the Red Sole Mark only in the color registered in its 20 years of making women's luxury designer footwear.  The unique status of the Red Sole Mark, its iconic association with Louboutin ("the designer known for his red soles." *The New York Times*, July 28, 2011, at E5), will be irreparably harmed and diluted by the presence of YSL's red-soled footwear.  Absent a preliminary injunction it is likely that the third party manufacturers who copy Louboutin will see a green light to resume their equally harmful copying.

YSL has openly and repeatedly acknowledged the Red Sole Mark, its strength, iconic status and widespread notoriety.  "[T]he red sole ... has become a distinctive mark for Christian Louboutin" (YSL designer Russo); the "distinctive signature" of the Louboutin brand (Mr. Pinault, CEO of YSL parent company PPR); and an exemplar of a "strong visual code" for women's high fashion designer footwear (YSL merchandising plan documents).  YSL's contention that use on an all red shoe exempts them is a distinction without a difference.  The evidence shows, as the quote above from yesterday's *Times* illustrates, the Red Sole Mark is and remains a source indicator regardless of the color of the shoe upper.

---

[1] Mr. Bernstein's reference to a second Louboutin registration (No. 3,376,197) is both irrelevant and well illustrates YSL's effort to misdirect this Court.  Louboutin has only <u>one</u> registration for the color of an outsole, *e.g.*, No. 3,361,597, the Red Sole Mark.  The "197" registration is <u>not</u> for the color of an outsole.  Rather it is for color used as part of a "stylized version of an outsole", in short a logo.  The "197" is the same logo found on the back of the Louboutin business card given to the Court during the hearing last Friday.  The registration of the Red Sole Mark is *specifically* for a "bright red lacquered outsole" used on "women's luxury designer footwear."

ME1 12063702v.1

Hon. Victor Marrero
July 29, 2011
Page 2

**The color designation in the Red Sole Mark registration is more than sufficient.**

The Trademark Manual of Examining Procedure ("TMEP"), codifying the C.F.R., specifically provides that the "color claim must include the generic name of the color claimed," *e.g.*, "red." TMEP § 807.07(a)(i). TMEP § 1202.05(e) requires the use of "ordinary language" in describing the color, "even if the applicant also describes the color using a commercial coloring system." In the United States, references to Pantone® system colors are optional; the color used in the drawing governs. Hence, "when the color shown in the drawing … is inconsistent with the color claimed in the written application, **the drawing controls**" (emphasis added). *Id.* at § 807.07(c). The red color registered in the Red Sole Mark is the measure of infringement.[2]

In authorizing registration of the color pink as a trademark for fiberglass insulation, the Federal Circuit noted, "we agree with the [Trademark Trial & Appeal] Board that 'deciding likelihood of confusion among color shades … is no more difficult or subtle than deciding likelihood of confusion where word marks are involved'." *In re Owens-Corning Fiberglass Corp.*, 774 F.2d 1116, 1123 (Fed. Cir. 1985) (citation omitted). As we noted during argument, this is a business judgment made every day.

As such, no matter what is said in words, a second comer is expected to compare its intended color with the example of the color *as shown on the drawing registered* and make a determination to stay far enough away to ensure avoidance of consumer confusion. The discussion about a so-called need for such a number by counsel for YSL is contrary to law and practice. Given the color registered as part of the Red Sole Mark, YSL was fully capable of doing that which it did not do: make a comparison and then stay away.

**The goods upon which the Red Sole Mark is used are properly described.**

Louboutin describes the goods upon which the Red Sole Mark is used as "women's luxury designer footwear." This description satisfies all requirements of the TMEP. This description meets the requirement to use ordinary language to provide notice of the exclusive right to use. *See* TMEP §§ 1402.02, 1402.03. YSL's head marketing officer, Vaissié, herself uses the very same language to describe YSL's footwear. The argument of its counsel that YSL does not understand the meaning of "women's luxury designer footwear" is unconvincing.

**Louboutin's registration for the Red Sole Mark is valid and enforceable.**

Registration confers the presumption of validity and enforceability. 15 U.S.C. §§

---

[2] The EU regulations are different and not applicable. The mark approved for registration in the EU is, however, *exactly* the same as the Red Sole Mark.

Hon. Victor Marrero
July 29, 2011
Page 3

1057(b), 1115(a). There is no evidence on the record to challenge the registration.

YSL and its counsel acknowledge that color on the outsole is "ornamental," not functional. TelConTr. at 11:7. YSL, as noted above, has also acknowledged the Red Sole Mark serves as a source indicator for Louboutin footwear. *See also* Chasser Dec., Beresford Dec. and Goldaper Dec.

Mr. Bernstein's assertion that YSL needs to use the Red Sole Mark to meet the requirements of design of a collection does not hold water. Fashion experts reject the notion that the use of Mr. Louboutin's red color on outsoles is necessary for the design of a "monochrome" shoe or for the appearance of an entire outfit. *See* Goldaper Dec. at ¶¶ 1.b, 5, 8, 14, 18. Nothing prohibits YSL from using red for its shoes in order to match its collections. Nothing prohibits YSL from using non-infringing outsoles on its footwear.

**There is no competitive necessity to use the Red Sole Mark on YSL products.**

YSL's history provides no support and contradicts Mr. Bernstein's argument (at the Friday hearing) of competitive necessity. He asserts (again without evidentiary support) that YSL used red on the outsoles of shoes in the late 1960s and then again starting in 2004. Putting aside the *de minimus* use claimed in relation to the size of the U.S. shoe market, the question is, if red outsoles are a competitive necessity, how was YSL able to do without them for *over 30 years*? YSL's purported "reintroduction" of red outsoles in 2004, only *after* Louboutin had made his Red Sole Mark famous as an indicator of source speaks rather of infringement.

**YSL's use is not a fair use because the red outsoles are a source identifier, a "strong visual code" and the "signature" of the LOUBOUTIN brand.**

Trademark use by an infringer is not fair use. Mr. Bernstein's argument that YSL adopted the red outsoles in order to extend its line, without any intent to infringe upon Louboutin's famous mark is not credible on this record; more importantly, it is irrelevant.

It is the obligation of the second comer -- here YSL -- to stay far enough away from the trademark in question to avoid confusion. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 260 (2d Cir. 1987) (Pegasus word mark held confusingly similar to plaintiff's flying horse symbol); *RJR Foods, Inc. v. White Rock Corp.*, No. 77 Civ. 2329, 1978 U.S. Dist. LEXIS 15080, at *7-8 (S.D.N.Y. Oct. 6, 1978) (red punch on blue background too close to plaintiff's design). "[T]he second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer." *E.g., Olay Co. v. Cococare Prods., Inc.*, No. 81 Civ. 4102, 1983 U.S. Dist. LEXIS 17613, at *28 (S.D.N.Y. Apr. 19,

Hon. Victor Marrero
July 29, 2011
Page 4

1983) (use of features and colors in packaging as a "line extension" from other products does not excuse trade dress and trademark infringement).

It is not the obligation of the trademark owner, nor of the court, to provide advisory opinions to the second comer on how close they can come to the mark without being held liable for infringement. Thus the unwillingness of Mr. Louboutin, a non-lawyer, to give an off the cuff opinion on infringement at his deposition, is actually the better part of wisdom. Use of an identical mark is not the test, although YSL meets that test here. In the words of one appellate court, "such a rule would eviscerate trademark law because few would be stupid enough to make exact copies of another's mark or symbol. It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts." *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 30 (1st Cir. 1989).

**Conclusion**

The red color used by YSL on the outsoles of five shoe models for its Cruise 2011 collection, Tribute, TribToo, Palais, Woodstock, and Gisele, is either nearly identical to the Red Sole Mark, or so close as to cause a likelihood of confusion.

The Klein survey used a photo of YSL's Tribute ("Stingray Sandal", finished in Tecnorefex/Razza Metal, color: Fragola/Rosa, with red outsole nearly identical to the Red Sole Mark). 49% of respondents thought it was a Louboutin shoe, proving likelihood of confusion in the post-sale setting. At point of sale, consumers seeing the world famous red soles on YSL shoes with YSL house marks on the shoes and boxes are likely to be deceived into thinking that Louboutin has "sponsored or otherwise approved the use of the trademark." *Camp Beverly Hills v. Camp Cent. Park*, No. 82 Civ. 2838, 1982 U.S. Dist. LEXIS 10019, at *8 (S.D.N.Y. May 10, 1982). All of this establishes likelihood of confusion. *Id.*

To accept the theories, novel as they are, of YSL, "would be the death knell for trademark protection. It would mean that simply because a consumer likes a trademark, or finds it aesthetically pleasing, a competitor could adopt and use that mark on its own products." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1064 (9th Cir. 2006).

The evidence shows that the Red Sole Mark is properly registered and that YSL, knowing the significance of the Red Sole Mark, elected to ignore the registration thereof and issue shoes with infringing red colored outsoles. Louboutin's Red Sole Mark is a clear and unassailable source indicator. That YSL claims to use their red sole for a different purpose does not let them escape the consequences of infringement.

Hon. Victor Marrero
July 29, 2011
Page 5


We appreciate the opportunity to submit this letter to the Court and respectfully request Louboutin's application for a Preliminary Injunction be granted.

Respectfully,

Harley I. Lewin

cc:     David H. Bernstein, Esq. (By Hand)
        Jyotin Hamid, Esq. (By Hand)

HIL/sl

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by
> _Plaintiff_.
> **SO ORDERED.**
> 2-29-11
> DATE                    VICTOR MARRERO, U.S.D.J.

ME1 12063702v.1