USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/3/11__

**McCARTER &ENGLISH**

ATTORNEYS AT LAW

August 2, 2011

BY HAND DELIVERY

Honorable Victor Marrero
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:  Christian Louboutin S.A. et. Al. vs. Yves Saint Laurent America Inc. Et. Al.
     **No. 11-CV-2381**

Dear Judge Marrero:

At approximately 5:00 p.m. yesterday August 1, 2011 we received a copy of the letter brief  of even date from David Bernstein, Esq. of Debevoise & Plimpton LLP. , together with exhibits, submitted on behalf of defendants in the referenced action.("YSL Letter.")  We write to object to the submission of the YSL Letter and request it be rejected by the Court.

At the close of the telephonic hearing held by the Court on 27 July 2011, this Court invited both sides to "summarize whatever **additional positions** you think we should take into account in a **brief** letters of **three to four pages** at most..."TelCon.Hr.Tr. at 15, ll.5-7. The YSL Letter instead, reworks and reargues aesthetic functionality and fair use arguments, submits a quantity of purported "evidence" that is unsupported on the record or irrelevant and is, in large measure, especially as to Plaintiffs' Klein survey, a sur-reply, without leave of this Court.

The YSL Letter should be stricken in its entirety because it fails to address the questions raised by the Court in the 27 July hearing, namely, the scope of coverage afforded the Red Sole Mark, the adequacy of notice to the second comer, and the proper scope of a preliminary injunction.  Instead, the YSL letter consisting of thirty-seven pages is an illegitimate, inappropriate sur-reply which is expressly prohibited by this Court, to wit: sur-replies are not accepted "without prior permission of the Court and then only in the rare instances in which new controlling law is promulgated after the filing of the reply papers." *Individual Practice of United States District Court Judge Victor Marrero* at II.B.  There is no new controlling law submitted in the YSL Letter; instead it is an attempt to reargue that which was argued in their opposition papers, and again at oral argument before the Court on July 22nd and by telephone on July 27th.

In addition, there are compelling reasons to exclude certain exhibits to the YSL letter over and above violation of the Court's express order to limit any letter to additional arguments, e.g. those not already briefed, and against any sur-reply unless permission was granted by the Court, to wit:

Harley I. Lewin
Partner
T. 212.609.6818
F. 212.602.0122
HLewin@mccarter.com

McCarter & English, LLP
245 Park Avenue
27th Floor
New York, NY  10167-0001
T. 212.609.6800
F. 212.609.6921
www.mccarter.com

BOSTON

HARTFORD

NEW YORK

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

ME1 12077978v.1

August 2, 2011
Page 2

     Exhibits 2, 3, and 4: These are irrelevant to the current dispute.

     Exhibit 2 is a registration held by Louboutin for a stylized outsole used as a logo by the Company.  It is in fact the logo shown to the Court on the back of Mr. Ragot's business card.  This mark is not part of this case and bears absolutely no relevance to the issue of likelihood of confusion.  It is yet another attempt to misdirect this Court.  It should be excluded.

     Exhibit 3 is a  Declaration of a certain Cristina Marchioni apparently signed in Milan on 21 July 2011, but not delivered or filed until 1 August 2011.  (As the date of signature is typed in, we have no way of knowing the true date on which the document was signed.)   This Declaration-regardless of the statements of counsel-is entirely new, deals with alleged facts rather than law and does not relate to the issues before the court, i.e.,. whether the color on YSL's outsoles for the five accused shoe models is confusingly similar to the Red Sole Mark.  Counsel for plaintiffs has had no opportunity to review the material or to test its veracity or to argue its contents and it is entirely inappropriate to be submitted to this Court at this late hour.

     Exhibit 4 purports to be the file from a prior attempt to register a red sole by Plaintiffs in 2002.  First, again, this is "new" evidence and should not be accepted. Second, it is not relevant. No one argues that there was more than one attempt to record the Red Sole Mark. The fact that a second attempt was made, five years after a first and grounded on significantly greater evidence than the first, which evidence fully supported the finding of secondary meaning by the then Examiner is all that matters.  It is a judgment, if any, the Court must make on the strength of the Red Sole Mark, *as registered*, that matters.

     Exhibit 5: This exhibit  is a bald attempt of YSL and counsel to circumvent the law and sneak into evidence the chart they acknowledged was a "demonstrative" at the 7/22 hearing,( *See,* Hearing 7/22 Tr. At 30 ll-7-8), which was objected to by counsel for Plaintiffs .

     Counsel for Plaintiffs repeatedly requested underlying documents that support this alleged chart. We were never provided with the underlying documents despite repeated requests.  The submission of this "chart"  as such violates F.R. Civ. P. 34.  Moreover, the rules require that any chart purporting to summarize voluminous documents may not be admitted into evidence unless the underlying information is made available for inspection which it has not been. Fed.R. Evid. 1006.

     The purported chart is flawed on its face.  First, the photographs are taken in a way that no one knows if they are accurate, especially since different colors of red often show up or "print" similarly when in fact they are not.  Only the true shoes matter.   Second, the information contained in the chart is allegedly

ME1 12077978v.1

August 2, 2011
Page 3

founded on the Vaissié Declaration, however, examination of the Vaissié Declaration shows it has absolutely no supporting evidence, no shipment documents, sales receipts, or the like to indicate true facts about shoes coming in to the United States, if this was at all relevant. Moreover, Vaissié testifies in her deposition that she had no knowledge of the very same information she suddenly comes up for her declaration. Finally,  counsel for YSL seeks to argue and testify with the *ad hoc* comments inserted as "additional facts" to which no argument was made during any oral hearing or thereafter because the chart was never admitted. For all of these reasons, we strongly object to the admission of this chart or any testimony contained in the Bernstein letter which purports to be based on this chart

Exhibit 6:  This table allegedly recalculates the recalculation of Mr. Klein who found serious fault with the defendants' Ford survey on secondary meaning.  There is absolutely no foundation for this table and/or its submission to this Court.  Klein submitted his recalculations by declaration showing the Court exactly what he did and how he used the data which had been furnished by Defendants only on demand of Plaintiffs' counsel.  The information contained in Exhibit 6 to the Bernstein letter is without any explanation whatsoever and deserves outright rejection by the Court.

In short, we had written the Court to ask if it wanted supplemental briefing on only those issues which had been raised in the initial oral argument before the Court but had not been previously briefed.  The Court heard telephonic argument and again invited a limited letter brief addressing the issues that had been unaddressed previously.  It did not invite exhibits without foundation, testimony by counsel, other essentially newly fabricated materials, or an illegitimate sur-reply rehashing arguments previously submitted.. This has now become an unfortunate but typical pattern of counsel for defendants, ignoring the directions of the court and the Federal Rules of Civil Procedure, putting in whatever they feel like and relying on the Court to take it in, read it, cast an impression therefrom regardless of whether or not properly submitted.

Finally, even if taken at face value, YSL provides no basis for challenging the statutory presumption of validity enjoyed by the Red Sole Mark because it offers no evidence whatsoever to challenge the validity of the mark.  Its repetition of the hollow contention that the Red Sole Mark lacks secondary meaning contradicts its own repeated admissions to the contrary, the determination of the USPTO that secondary meaning had been proven, and the overwhelming weight of publicity and fame attached to the Red Sole Mark in the public media and popular culture.

ME1 12077978v.1

August 2, 2011
Page 4


      We request the YSL Letter be excluded in its entirety, that the Court sanction YSL in a manner it determines appropriate given the egregious conduct it has exhibited and that Plaintiff's request for a Preliminary Injunction *pendente lite* be granted.

Sincerely,

McCarter & English LLP

By: Harley I. Lewin

Partner

ild

cc:   David Bernstein, Debevoise & Plimpton


The Court agrees that defendants' letter dated 8-1-11 contains some text and exhibits that go beyond the scope of the Court's request at the 7-27-11 conference. The Court will disregard the non-complying submissions. No further briefing on this matter is necessary.

SO ORDERED:

8-2-11
DATE

VICTOR MARRERO, U.S.D.J.


ME1 12077978v.1